In re Petition for **DISCIPLINARY AC-TION AGAINST Gerald D. THEDENS, an Attorney at Law of the State of Minnesota.**

**No. C9–96–1260.**

Supreme Court of Minnesota.

Jan. 16, 1997.

Marcia A. Johnson, Timothy M. Burke, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Gerald D. Thedens, Isle, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (hereinafter "Director") issued charges of unprofessional conduct against respondent, Gerald D. Thedens, on February 13, 1996. The charges identified three types of violations: neglect of a client matter in violation of Rule 1.3, Minnesota Rules of Professional Conduct (MRPC); tax-law infractions in violation of Rules 8.4(c) & 8.4(d), MRPC; and noncooperation with an investigation by the Lawyers Professional Responsibility Board in violation of Rule 8.1(a)(3), MRPC, and Rule 25, Rules on Lawyers Professional Responsibility (RLPR). A Panel hearing was scheduled for June 7, 1996 but respondent failed to attend. The Director filed a petition for disciplinary action on June 10, 1996. Respondent failed to serve an answer. On July 10, 1996, the Director filed a motion for summary relief and on July 16, 1996, this court granted the Director's motion and filed an order pursuant to Rule 13(b), RLPR, deeming admitted all allegations contained in the petition.

The Director recommended that respondent be suspended indefinitely from the practice of law with the right to apply for reinstatement after two years. Respondent proposed that he be suspended from the practice of law for 60 days, with the suspension stayed for a period of two years on the conditions that 1) no same or similar complaints are registered against respondent for two years, and 2) respondent volunteer for 100 hours of pro bono legal aid in each of the next two years. We conclude that a six-month suspension is appropriate given the facts and circumstances of this case.

This disciplinary action arises out of a notice of complaint filed by the Minnesota Department of Revenue (hereinafter "DOR") with the Director on March 19, 1993, alleging that the respondent failed to comply with the filing and payment requirements of Minn. Stat. §§ 289A.08, 289A.11 or 290.92 (1992).

The respondent, who was admitted to practice law in Minnesota on May 11, 1984, had sufficient gross income from 1984 to 1991 to require him to file federal individual income tax returns. However, respondent failed to timely file his federal income tax returns for tax years 1984, 1987, 1990 and 1991. The details of his failure to timely file federal income tax returns are as follows: In 1985, respondent was granted an extension to October 15, but did not file his 1984 return until December 9, 1985. In 1988, respondent was granted an extension to October 15, but did not file his 1987 return until December 5, 1988. In 1990, respondent was granted an extension to October 15, but did not file his 1989 return until November 11, 1990. In 1992, respondent was granted an extension to August 15, but did not file his 1991 return until September 14, 1992. As of August 23, 1993, respondent had an outstanding federal tax liability of $12,870.18 from 1987, and $1,223.95 from 1989.

Respondent also had sufficient gross income in 1984 to require him to file a Minnesota individual income tax return. Respondent received an extension to October 15, 1985, but did not file his 1984 return until October 16, 1985. The DOR assessed a civil-fraud penalty against respondent for his failure to claim a $148,483 taxable event on his 1984 return that occurred while respondent claimed he was a California resident. Respondent claimed he was taxed by the State of California on this event, but California taxing authorities reported that respondent did not file a California individual income tax return for 1984. Respondent did not appeal the civil-fraud penalty and as of November 17, 1995 had an outstanding 1984 Minnesota individual income tax liability of $22,117.06.

In 1989, the DOR assessed a penalty against respondent under Minn.Stat. § 290.53, subd. 3A for his failure to provide the DOR with requested records for the purpose of an audit. In 1990, the DOR placed a lien against respondent's real property as allowed by Minn.Stat. § 270.69 in the amount of $4,265.29, the unpaid income tax due for tax year 1989. Later in 1990, the DOR placed a second lien on respondent's real property for $43,778.38, the unpaid income tax due for tax years 1984, 1985, 1987 and 1989.

The DOR filed a complaint with the Director's office on March 19, 1993. The Director immediately began an investigation and respondent repeatedly failed to respond to the Director's request in a timely manner. The details of those failures are as follows:

The Director mailed to respondent a notice of investigation on March 30, 1993. In that notice, the Director requested that respondent return within 14 days certain information in writing and an executed tax authorization. After a subsequent letter had been sent by the Director on April 23, 1993, respondent provided a written response dated April 19, 1993. The Director also received the executed tax authorization on May 6, 1993.

In a January 18, 1994 letter, the Director requested respondent to provide information and documents by February 8, 1994. After a subsequent letter making the same requests had been sent by the Director, respondent provided the information on February 28, 1994.

In a May 11, 1994 letter, the Director requested that respondent provide information and documents by May 21, 1994. Re-

spondent provided the information on June 1, 1994.

During a June 20, 1994 session where respondent gave a sworn statement, the Director requested that respondent provide information and documents. That request was confirmed by a June 21, 1994 letter from the Director asking that the information and documents be provided by July 15, 1994. After respondent advised the Director on July 19, 1994 that he would provide the information and documents within six or seven days, and after the Director sent another letter on September 8, 1994 requesting the same material by September 23, 1994, respondent provided the information and documents on October 10, 1994.

In a November 15, 1994 letter, the Director requested that respondent execute and return by November 25, 1994 an authorization allowing the Director to obtain information from respondent's accountant. In a December 19, 1994 letter, the Director reiterated the request from November 15, 1994 and also asked respondent to execute and return state and federal tax authorizations by December 30, 1994. Respondent provided all three authorizations on January 6, 1995.

In a September 6, 1995 letter, the Director requested respondent to re-execute and return the state and federal tax authorizations because the previous authorizations had expired. During a September 14, 1995 telephone conversation with the Director's office, respondent said he would return the authorizations by September 18, 1995. In letters dated September 25, 1995 and October 2, 1995, the Director reiterated her requests. On October 9, 1995, per respondent's request, the Director sent a second set of state and federal tax authorizations to the respondent and also requested that respondent execute and return a California tax authorization by October 19, 1995. The Director reiterated her requests on October 23, 1995. On October 27, 1995, the Director received the requested Minnesota and federal tax authorizations, but on the Minnesota tax authorization, respondent included a hand-written limitation that read: "information regarding Minnesota Tax Forms only and Dept. of Rev-

enue wrong doing (sic)." Respondent failed to provide the California tax authorization.

In addition, the Director became aware that the respondent had neglected a client matter. On March 19, 1993, Joanne and Rita Dryburgh paid $300 to retain respondent for representation regarding an estate issue that included a transfer of real estate. According to respondent's billing records, respondent spent one-and-one-half hours on the project between March 19, 1993 and October 25, 1993, when respondent commenced work on the matter. Respondent continued to work on the matter until he withdrew in approximately April 1994.

The Director ultimately issued charges of unprofessional conduct against respondent on February 13, 1996, and the pattern of noncooperation continued. On March 27, 1996, the Director served on respondent a notice of a panel hearing pursuant to Rule 9, RLPR. Respondent failed to attend the June 7, 1996 panel hearing. On June 10, 1996, the Director filed a petition for disciplinary action against the respondent. Respondent admitted service of the petition on June 14, 1996, but did not file an answer within 20 days of service as required by Rule 13(a), RLPR.[1] The Director filed a motion for summary relief on July 10, 1996, and this court, pursuant to Rule 13(b), RLPR, granted the order on July 16, 1996.

Because the allegations of the petition are deemed admitted, we address only the appropriate discipline in this case. In considering appropriate sanctions for attorney misconduct, we weigh the following factors: the nature of the misconduct, the cumulative weight of disciplinary violations, the harm to the public, and the harm to the legal profession. *In re Lochow,* 469 N.W.2d 91, 96 (Minn.1991). This court looks to similar cases to assist it in determining proper discipline for attorney misconduct. *In re Sigler,* 512 N.W.2d 899, 901 (Minn.1994). In considering mitigating factors in assessing discipline, the court looks for an appreciation by the attorney of the harm he has caused others and evidence that he considers himself

1. In fact, respondent never filed an answer.

348

obligated to conform to the rules. *In re Franke*, 345 N.W.2d 224, 229 (Minn.1984).

■ The Director argues that respondent's civil tax-fraud penalty, the failure to timely file federal and state income tax returns and the neglect of a single client matter each was by itself a serious enough violation of the Minnesota Rules of Professional Conduct to merit a substantial suspension. We disagree.

■ It is true that tax-code infractions constitute a violation of a lawyer's oath to uphold the constitutions and laws of the United States and Minnesota. *In re Bunker*, 294 Minn. 47, 50–51, 199 N.W.2d 628, 630 (1972) ("Any violation of the income tax laws represents a threat to the ability of our governmental units to function, whether such action is done with corrupt intent or not."). It also is true that tax-code infractions are a violation of the MRPC. *See* Rules 8.4(c) and 8.4(d), MRPC; Comment to Rule 8.4, MRPC ("Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return.").[2] Consequently, this court often has imposed harsh sanctions when such violations have resulted in criminal prosecutions. *See In re Barta*, 461 N.W.2d 382 (Minn.1990) (indefinitely suspending attorney following criminal prosecution with leave to apply for reinstatement only upon certain conditions); *In re Diesen*, 173 Minn. 297, 217 N.W. 356 (1928) (suspending attorney for three years following criminal prosecution).[3] This court also

has levied harsh sanctions when such violations have involved a complete failure to file returns. *See Bunker*, 294 Minn. at 55, 199 N.W.2d at 632 (stating that repeated failures to file income tax returns will lead to "either suspension or disbarment").

When the violations have involved a mere failure to timely file, however, we have been far more lenient. Among those cases dealing specifically with a failure to file a timely return or returns, we have administered sanctions that include a public reprimand and probation, *In re Donohoo*, 441 N.W.2d 450 (Minn.1989); *In re Anastas*, 368 N.W.2d 271 (Minn.1985); 30–day suspension and a probationary period, *In re Ylitalo*, 420 N.W.2d 615 (Minn.1988); *In re Orme*, 418 N.W.2d 161 (Minn.1988); *In re Bolen*, 416 N.W.2d 449 (Minn.1987); *In re Erickson*, 415 N.W.2d 670 (Minn.1987); and an indefinite suspension, *In re Jones*, 383 N.W.2d 686 (Minn.1986) (attorney was on probation at time of violation and committed further unprofessional misconduct in the form of misrepresentation to the Lawyers Professional Responsibility Board).

Although it does not ring true that respondent's failure to report the $148,483 taxable event in 1984 was an honest mistake,[4] the fact remains that the DOR failed to bring criminal charges. And unlike the attorney in *Bunker*, who completely failed to file either a state or federal return at least 15 times, 294 Minn. at 49, 199 N.W.2d at 629, the respondent in the case at bar never failed to file a single return. Consequently, we hold that

2. Rule 8.4, MRPC, is entitled "Misconduct" and reads, in part:

It is professional misconduct for a lawyer to:
. . . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
. . . .

3. Although a conviction for tax violations is not a prerequisite for discipline, *In re Knutson*, 405 N.W.2d 234, 237–38 (Minn.1987), respondents' convictions played a part in the court's decisions to suspend both Barta and Diesen. *Barta*, 461 N.W.2d at 385 (stating that Barta's felony conviction is a "serious *crime* reflecting adversely upon his character") (emphasis added); *Diesen*, 173 Minn. at 301, 217 N.W. at 357 (stating that "[t]he

circumstances of the offense and the situation under which respondent entered and *allowed his plea of guilty to stand* permit no escape from the conclusion that the misdemeanor for which sentence was imposed upon such plea was one involving moral turpitude") (emphasis added).

4. In a letter to this court, respondent claimed that his failure to report the income from the sale of real estate in California was based upon bad advice from his accountant regarding the proper valuation of the capital gain. At oral argument, however, respondent insinuated that this advice centered on his residency, and the appropriate state in which respondent should have reported the income. This, or any other argument regarding the honesty of his mistake, becomes highly suspect given the fact that respondent reported the income on his federal return but failed to report it on any state return.

respondent's tax-code infractions, although violations of the Minnesota Rules of Professional Conduct, do not by themselves merit suspension.

Likewise we hold that the single incident of client neglect cited by the Director in her petition does not by itself rise to the level of seriousness to merit suspension. We take note that the respondent, by failing to answer the petition filed by the Director, admitted all allegations included in the petition. Rule 13(b), RLPR. We further acknowledge that neglect in disposing of legal matters accepted violates Rule 1.3, MRPC. *See In re Henning*, 294 Minn. 336, 337–38, 201 N.W.2d 208, 208 (1972). Violation of Rule 1.3, MRPC, has lead to public reprimand, probation, suspensions, indefinite suspensions and disbarment. This court typically punishes minor matters of neglect with reprimands and probation. *E.g., In re Mitchell*, 368 N.W.2d 273, 274 (Minn.1985). When the attorney's neglect is combined with other acts of neglect or other violations, however, this court often has suspended or disbarred the attorney. *E.g., In re Hartke*, 529 N.W.2d 678, 683 (Minn.1995) (stating that repeated and continued neglect of client matters warrants severe sanctions); *In re Braseth*, 352 N.W.2d 22 (Minn.1984) (indefinite suspension for neglect of probate and real estate matters); *In re McCoy*, 447 N.W.2d 887 (Minn. 1989) (disbarment for multiple incidents of neglect, combined with failure to respond to court order and failure to cooperate in disciplinary matters).

Before we can administer the appropriate sanctions for respondent's admitted allegations, therefore, the Director must provide us with sufficient facts, on the record, to determine the seriousness of the infraction. In

this case, the record tells us that respondent spent just one-and-one-half hours between March 19, 1993 and October 25, 1993 working on a certain estate matter. It also tells us that after October 25, respondent commenced work on the file and continued working on it until he withdrew from representation in approximately April 1994. Without more, it is impossible to determine if this behavior even rose to a level of inattentiveness required to establish neglect, let alone serious neglect. And as a result, we do not afford it much consideration in determining the appropriate sanctions for the respondent.

The fact that the respondent failed on a regular basis to cooperate with the disciplinary system, however, is a different matter. A lawyer under investigation by the Director of the Office of Lawyers Professional Responsibility has a duty to cooperate with the Director's "reasonable requests." Rule 8.1(a)(3), MRPC;[5] Rule 25, RLPR.[6] As we recently stated: "Our past cases have indicated that failure to cooperate with disciplinary authorities is itself grounds for discipline." *In re Grzybek*, 552 N.W.2d 215, 217 (Minn.1996) (*citing In re Olson*, 545 N.W.2d 35, 38 (Minn.1996)).

The Director argues that respondent's failure to timely respond to her requests, failure to execute a full state tax authorization as requested in September 1995, and failure to file an answer to the petition for disciplinary action constituted "[s]erious non-cooperation" that by itself merits suspension. In support of this conclusion, Director relied on *In re Sigler*, 512 N.W.2d 899 (Minn.1994) and *In re Cartwright*, 282 N.W.2d 548 (Minn.1979). In both cases, however, the attorneys complete-

5. Rule 8.1(a)(3), MRPC, reads, in part:
 (a) An applicant for admission to the bar, or a lawyer * * * in connection with a disciplinary matter, shall not:
 . . . .
 (3) knowingly fail to respond to an admission or discipline authority's lawfully authorized demand for information by either providing the information sought or making a good faith challenge to the demand.

6. Rule 25, RLPR, reads, in part:
 (a) Lawyer's duty. It shall be the duty of any lawyer who is the subject of an investigation or

proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:
 (1) Furnish designated papers, documents or tangible objects;
 (2) Furnish in writing a full and complete explanation covering the matter under consideration;
 (3) Appear for conferences and hearings at the times and places designated.

ly failed to provide information sought by the Director. The attorney in *Sigler* failed to respond to at least six letters, numerous phone calls and a notice of investigation. 512 N.W.2d at 900–01. Likewise, the attorney in *Cartwright*, after numerous warnings, "never sent the requested material." 282 N.W.2d at 550.

Respondent in the case at bar, although habitually late in responding to the Director's requests, never failed to provide requested factual materials. Respondent did fail to file an answer to the petition for disciplinary action, but such a failure means only that the allegations included within the petition are deemed admitted. Rule 13(b), RLPR.

 Respondent's failure to attend the June 7, 1996 panel hearing is more serious. A failure to appear at a pre-hearing meeting[7] violates Rule 8.1(a)(3), MRPC, Rule 25, RLPR, and the recommendations of this court set out in *In re Cartwright*, 282 N.W.2d 548, 552 (Minn.1979). *In re Henke*, 400 N.W.2d 720, 721 (Minn.1987). An attorney's failure to attend the pre-hearing meeting may, in itself, provide a separate basis for discipline. *In re A.M.E.*, 533 N.W.2d 849, 851 (Minn.1995) (upholding panel's admonition). Although the respondent in the case at bar attended his pre-hearing meeting, he did not attend the panel hearing. In the past, we regularly have suspended attorneys who failed to attend their pre-hearing meetings. *In re Grzybek*, 552 N.W.2d 215 (Minn. 1996) (six months suspension for attorney who also had three specific instances of client neglect); *In re Olson*, 545 N.W.2d 35 (Minn. 1996) (indefinite suspension for a minimum of two years for attorney who also had severely neglected client matters); *In re Kinnunen*, 502 N.W.2d 773 (Minn.1993) (18 months' suspension); *In re Neill*, 486 N.W.2d 150 (Minn. 1992) (three years' suspension for attorney who also practiced law on CLE restricted status and severely neglected client matters). At the very least, the failure to attend a panel hearing is as serious a violation as a

failure to attend a pre-hearing meeting and by itself merits a suspension.

Consequently, we conclude that the appropriate sanction for respondent's misconduct is a six-month suspension from the practice of law. Accordingly, we order that:

1. Respondent Gerald D. Thedens is hereby suspended from the practice of law for six months commencing 14 days from the date of this order.

2. Respondent comply with the requirements of Rule 26, RLPR.

3. Respondent shall pay to the Director the sum of $750 in costs and disbursements pursuant to Rule 24, RLPR.

We waive the requirement of a petition for reinstatement under Rule 18, RLPR.

So ordered.

BLATZ, J., took no part in the consideration or decision of this case.

---

7. A pre-hearing meeting precedes a panel hearing. Rule 9(e), RLPR. The facts here are different from those presented in *In re Hoffman*, 379 N.W.2d 514 (Minn.1986) where the respondent missed both the pre-hearing meeting and panel hearing. There, because the respondent's failure to attend either meeting was based upon a good faith challenge to the constitutionality of Rule 9, RLPR, we held that he did not violate Rule 25, RLPR. *Id.* at 518.