In re PETITION FOR DISCIPLINARY
ACTION AGAINST Daniel J. MOUL-
TON, a Minnesota Attorney, Registra-
tion No. 136888.

No. A05–1865.

Supreme Court of Minnesota.

Sept. 28, 2006.

Martin A. Cole, Director Office of Lawyers Professional Responsibility, Betty M. Shaw, Senior Assistant Director, St. Paul, MN, for Appellant.

Edward F. Kautzer, Ruvelson & Kautzer, Ch., St. Paul, MN, for Respondent.

## OPINION

PER CURIAM.

Daniel J. Moulton was admitted to practice law in Minnesota on May 7, 1982. His disciplinary history includes a September 11, 1992, admonition for violating Rules 1.6, 3.4(c), 4.4, 5.3(c), and 8.4(a) and (d) of the Minnesota Rules of Professional Conduct; a September 15, 1992, admonition for violating Rule 1.8(j); an April 14, 1995, admonition for violating Rules 1.15 and 1.16; a February 25, 2000, admonition for violating Rule 3.7; and a March 22, 2002, stipulation to a two-year probationary period for violating Rules 1.1, 1.3, 1.4(a), 1.6(a), 1.15(c)(2), 5.3(c), 7.1, 7.5, and 8.4(a). This current disciplinary matter arises from a June 1, 2005, Petition for Disciplinary Action filed by the Director of the

Office of Lawyers Professional Responsibility, which alleges generally that Moulton failed to file federal and state income taxes and failed to file employer withholding returns. More specifically, the petition alleges that Moulton failed to file certain state employer withholding tax returns, failed to timely pay certain state employer withholding taxes even when the withholding tax returns were timely filed, and failed to timely file certain federal employer withholding tax returns and failed to timely pay certain federal employer withholding taxes in violation of Minn. R. Prof. Conduct Rule 8.4(d).

The Honorable Bruce W. Christopherson was appointed as referee in this matter and, after an evidentiary hearing, concluded that Moulton's conduct violated Minn. R. Prof. Conduct 8.4(d).[1] In his Findings of Fact and Conclusions of Law and Recommendation for Discipline, the referee recommended that Moulton be

> suspended from the practice of law for 90 days, that reinstatement pursuant to Rule 18(e) and (f), Rules on Lawyers Professional Responsibility (RLPR), be conditioned upon entering into and remaining in compliance with a repayment agreement or making an offer in compromise acceptable to the IRS, and compliance with Rules 24 and 26, RLPR.

The referee also recommended that, upon reinstatement, Moulton be placed on unsupervised probation for the longer of:

1. Two years from the date of the disciplinary order from the Supreme Court, during which period Respondent shall have timely filed all employer withholding tax returns due in the future and timely paid the taxes due thereon from the Moulton Law Office and any other businesses for which he is personally so responsible; or

2. Until Respondent has fully paid, or fully paid any lesser amount agreed by the taxing authorities, all past due employer withholding tax liabilities for the Moulton Law Office or any other business for which he is responsible for payment.

Moulton timely ordered a transcript to contest the referee's Findings and Conclusions and, as a result, pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), the referee's findings and conclusions are not conclusive. Further, while conceding that he failed to timely file some quarterly employer withholding tax returns and failed to timely pay some employer withholding taxes, Moulton argues that the appropriate sanction is a stayed 30–day suspension.

From 1998 through 2005, Moulton engaged in a pattern of noncompliance with the Internal Revenue Service (IRS) during which he failed to timely file and pay employer withholding taxes for several of his businesses, including his law firm. The total past-due liability for his businesses, including fees and penalties, exceeds $600,000.

According to the referee's findings, Moulton owns and operates Moulton Law Office as a sole proprietorship and employs personnel to assist in its operation. In conjunction with the law office, Moulton operates two other sole proprietorships, a chinchilla ranch and a storage rental busi-

---

[1]. Rule 8.4(d) states that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." The referee found that Moulton also violated Rules 8.4(b) and (c); however, the Director only pled a violation of Rule 8.4(d) and requests that this court limit the referee's conclusion accordingly.

ness. Each of these entities uses the same tax identification number as the law office. Although Moulton deducted employee withholding taxes from his employees' pay between 1998 and 2005, he failed to timely file quarterly employer withholding tax returns 11 times for these entities and failed to timely pay the required taxes 23 times.[2]

2. The following chart summarizes the Moulton Law Office's employer withholding tax filings and payments:

| Quarterly Filing | Timely | Amount Due | Federal Tax Deposit Credited to Quarter |
|---|---|---|---|
| March 1998 | Late—filed 9/9/98 | $ 8,539.66 | $ 8,539.66 |
| June 1998 | Late—filed 12/13/98 | $ 8,878.38 | $ 8,878.38 |
| September 1998 | Late—filed 2/3/99 | $10,046.29 | $10,046.29 |
| December 1998 | Timely—filed 1/31/99 | $12,337.30 | None |
| March 1999 | Timely—filed 4/30/99 | $ 9,303.49 | $ 9,303.49 |
| June 1999 | Late—filed 8/8/99 | $ 8,036.28 | None |
| September 1999 | Timely—filed 10/31/99 | $ 7,790.82 | None |
| December 1999 | Timely—filed 1/31/00 | $ 7,893.44 | None |
| March 2000 | Timely—filed 4/30/00 | $ 7,364.44 | $ 7,364.44 |
| June 2000 | Timely—filed 7/31/00 | $ 8,091.94 | $ 8,091.94 |
| September 2000 | Timely—filed 10/31/00 | $ 8,159.46 | $ 66.47 |
| December 2000 | Timely—filed 1/31/01 | $ 8,123.13 | None |
| March 2001 | Timely—filed 4/30/01 | $ 7,112.91 | $ 240.68 |
| June 2001 | Timely—filed 7/31/01 | $ 6,308.14 | None |
| September 2001 | Timely—filed 10/31/01 | $ 7,589.38 | None |
| December 2001 | Late—filed 2/19/2002 | $10,417.79 | None |
| * March 2002 | Timely—filed 4/30/2002 | $ 8,157.96 | None |
| * June 2002 | Timely—filed 7/31/2002 | $ 8,161.58 | None |
| * September 2002 | Timely—filed 10/31/2002 | $ 6,589.57 | None |
| * December 2002 | Prepared by IRS, Filed 3/25/04 | $10,980.32 | None |
| * March 2003 | Timely—filed 4/30/2003 | $ 8,607.00 | None |
| * June 2003 | Late—filed 8/18/03 | $10,094.04 | $ 1,582.36 |
| * September 2003 | Timely—filed 10/31/03 | $10,737.37 | $ 400.00 |
| * December 2003 | Timely—filed 1/31/04 | $ 9,780.09 | None |
| * March 2004 | Timely—filed 4/30/04 | $ 8,352.61 | $ 2,206.66 |
| June 2004 | Late—filed 10/8/04 | $ 7,356.00 | None |
| September 2004 | Late—filed 12/1/04 | $ 9,098.21 | None |
| December 2004 | Late—filed 6/27/05 | $ 6,267.00 | None |
| March 2005 | Late—filed 6/6/05 | $ 4,202.64 | $ 3,407.16 |
| June 2005 | Timely—filed 7/31/05 | $ 4,768.90 | $ 4,768.90 |

* Indicates the period during which Moulton was on probation.

In addition to the three sole proprietorships, Moulton is the sole corporate officer of two corporations, Southern Minnesota Air Freight (SMAF) and Rochester Express (LAGNAF). As the sole corporate officer, he is responsible for filing the federal employer withholding tax returns and paying the tax liabilities.

The referee calculated that from 1998 through July 31, 2005, Moulton's three sole proprietorships accrued unpaid tax liabilities for employer withholding taxes totaling $184,249.71, not including penalties and interest. In addition, the referee calculated that SMAF owed $100,768 and LAGNAF owed $236,107.36 in outstanding federal employer withholding tax liabilities.

The referee found that an IRS lien on Moulton's assets mitigated his misconduct because the lien adversely affected his ability to repay the delinquent taxes. The referee also found mitigation in the fact that Moulton made some payments on his tax obligations during 2005; paid court-ordered child support for his three minor children; made organizational changes to his business that, according to the referee, are "intended to result in more positive cash balances"; and was reasonably cooperative with the disciplinary proceedings. The referee also found, however, that Moulton's misconduct was aggravated by his disciplinary history; the fact that, in addition to the tax liabilities for his sole proprietorship, he also had employer withholding tax liabilities for his two corporations; and the fact that the misconduct involved relatively large amounts of money over a long period of time. An aggravating factor not addressed by the referee is the fact that some of Moulton's misconduct took place while he was on probation between March 22, 2002, and March 2004. One condition of that probation required that Moulton abide by the Minnesota Rules of Professional Conduct. While on probation, Moulton filed one quarterly employer withholding return late and failed to file one at all. Further, although Moulton made some payments on his tax liabilities during his probationary period, he never once paid the entire quarterly balance due and paid nothing at all for six quarters.

 Here, Moulton challenges findings of fact 7[3] and 13,[4] in addition to the referee's conclusion that his conduct violat-

---

3. Finding 7 is as follows:

 At the hearing, Respondent attributed many of his failures to file certain returns and pay the taxes to two factors. First, Respondent alleged that for several years, in varying manner, three successive bookkeepers he hired to prepare tax returns and pay the taxes, and particularly Steven Fuchs from 1998 to 2003, failed to file some of the returns after Respondent signed them, and failed to send checks Respondent signed to the IRS for the taxes. Even though Respondent believed that at least Fuchs embezzled some of the money, he did not attempt to have Fuchs prosecuted criminally, explaining at the hearing that he did not want to "spend good money after bad." Respondent denied timely knowledge of wrongful actions. The referee does not find Respondent's claims credible.

 Secondly, Respondent alleged that his business records were damaged or stolen, thus interfering with his ability to file tax returns. In August 2002, an arson-caused fire at Respondent's office destroyed some of his office records. In February 2003, there was a burglary at Respondent's office. The referee finds that both events did occur, but that no significant loss of relevant business records resulted from the burglary. Some significant loss of relevant business records likely did result from the fire. While that result could have temporarily caused difficulty in the filing and payment of taxes for the quarter in which the fire occurred, the referee finds that the fire did not cause any significant effect upon the filing and payment of taxes for all other prior and subsequent periods.

4. The first sentence of finding 13 reads, "Respondent failed to fully and substantially cooperate with the IRS (Exhibit 8)."

ed Minn. R. Prof. Conduct 8.4(d). We will uphold a referee's findings and conclusions in attorney discipline proceedings if they have evidentiary support in the record and are not clearly erroneous. *In re Pinotti,* 585 N.W.2d 55, 62 (Minn.1998). Deference to the referee is particularly appropriate when the findings are based on a respondent's demeanor, credibility, or sincerity. *Id.* Accordingly, this court will only reverse findings of fact if, "upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *In re Strid,* 551 N.W.2d 212, 215 (Minn.1996)).

A careful review of the record before us leads us to conclude that findings 7 and 13 and the referee's conclusion that Moulton violated Rule 8.4(d) are amply supported by evidence in the record and are not clearly erroneous. In reaching that conclusion, we note that the referee's findings and conclusion are based at least in part on credibility determinations.

■■■ Having concluded that findings 7 and 13 and the referee's conclusion that Moulton violated Rule 8.4(d) are supported by the evidence in the record and are not clearly erroneous, we are left with the question of the appropriate sanction. The referee recommended that Moulton be suspended for 90 days with conditions for reinstatement. "The purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather 'to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.'" *In re Vaught,* 693 N.W.2d 886, 890 (Minn.2005) (quoting *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004)). When considering the appropriate sanction, we place great weight on a referee's recommendation, but the final responsibility for determining the appropriate disci-

pline is ours. *In re Gurstel,* 540 N.W.2d 838, 841–42 (Minn.1995). In determining the appropriate sanction, we consider "the nature of the misconduct, the cumulative weight of disciplinary violations, the harm to the public and the harm to the legal profession." *Id.* at 841–42 (citing *In re Jagiela,* 517 N.W.2d 333, 335 (Minn.1994)). In addition, we consider any aggravating or mitigating circumstances, and also look to similar cases for guidance. *Vaught,* 693 N.W.2d at 890. The failure to timely file and pay employer withholding taxes is serious misconduct warranting suspension or disbarment. *Gurstel,* 540 N.W.2d at 842.

■■■ As we said in *Gurstel,* "the failure to pay employer's withholding taxes is tantamount to taking employees' money for the attorney's own use, breaches the trust established between employer and employee, and calls on governmental resources to enforce compliance with the law by those who are sworn to uphold it." *Id.* Further, violation of our disciplinary rules while on probation is a factor that warrants more significant punishment. *See, e.g., In re Graham,* 609 N.W.2d 894, 897 (Minn.2000) (explaining that, "[t]he fact that the current misconduct occurred while Graham was on probation is also a significant aggravating factor"); *In re Ylitalo,* 420 N.W.2d 615, 617 (Minn.1988) (discussing probation versus suspension and stating, "[s]uspension is particularly appropriate where the failure to file occurs while an attorney is already on probation").

Moulton argues that a 30-day stayed suspension conditioned upon his payment of court costs, continued cooperation with the Director's office, and the prompt payment of outstanding tax liabilities is adequate punishment for his misconduct. Moulton contends that his misconduct is less severe than conduct for which this court has previously imposed 30- and 90-day suspensions and that "there is nothing

in the record to show any legitimate aggravating circumstances that would suggest an unstayed suspension." He further contends that his conduct is mitigated by his cooperation with the IRS, the effect of his bookkeepers' poor performance, the effect that a fire and burglary at his office had on his ability to file and pay employer withholding taxes, the fact that he has expressed an attitude of understanding of the importance of filing and paying his tax obligations, that he has made progress in keeping current with his tax filings and payments, and that he has not lived a lavish lifestyle characteristic of one living outside his means. Thus, Moulton contends that a stayed suspension would better serve the public and profession, and would safeguard against future violations by allowing him to continue working and paying down his tax liability.

The Director responds that the "referee correctly assessed and recommended the appropriate sanction" and argues that a stayed suspension would be inappropriate because "in effect, [it would be] equivalent to reprimand and probation." With respect to Moulton's mitigation arguments, the Director contends that this court should afford them little weight. The Director asserts that Moulton's cooperation with the disciplinary proceedings should be afforded little weight because his cooperation is required by Rule 25 of the Rules on Lawyers Professional Responsibility and ordinary compliance should not be considered mitigation. The Director further asserts that this court should not afford much weight to the fact that Moulton pays child support given that the support is court ordered and thus required by state and federal law. The Director also contends that the changes Moulton made to his business practices should be given little or no weight because "they are no more remarkable or reasonable than ordinarily prudent conduct." Finally, the Director

urges this court not to give great weight to the impact of the tax liens filed by the IRS on Moulton's ability to pay his withholding taxes. The Director contends that the liens should not be given great weight because Moulton continued late filing of his returns after the IRS filed the liens in July 2004 and continued using assets from his law office to pay the expenses of his other businesses, instead of paying the employer withholding taxes.

We agree with the Director that not much weight should be given to Moulton's mitigation arguments. In that cooperation with disciplinary proceedings is required by Rule 25 of our Rules on Lawyers Professional Responsibility and that payment of court-ordered child support is required by law, we do not believe they qualify as mitigating factors. As for Moulton's changes in his business practices, the Director is correct—"they are no more remarkable * * * than ordinarily prudent conduct." As for the contention that the IRS liens somehow mitigate Moulton's misconduct, they do not. First, we note that it appears that after the liens Moulton continued to use money withheld from employees for withholding tax purposes to pay business expenses instead of paying the withholding taxes. Second, the liens presumably resulted in a reduction of Moulton's unpaid tax liabilities and therefore arguably reduced their burden on Moulton's operations. Finally, with respect to Moulton's mitigation claims based on cooperation with the IRS and the impact that his bookkeepers' performance, the fire, and the burglary had on his ability to file and pay employer withholding taxes, it is enough to note that the referee, as discussed above, considered and rejected these claims.

In support of his argument that the appropriate discipline should be a stayed

30–day suspension, Moulton directs our attention to a number of cases, including *In re Ranum*, 611 N.W.2d 344 (Minn.2000) (imposing a three-month suspension for various violations, including the failure to timely file state and federal income taxes), and *In re Tyler*, 495 N.W.2d 184 (imposing a 30–day suspension for failure to timely file and pay individual income taxes and employer withholding taxes). Moulton argues that his misconduct was significantly less severe than the misconduct of the lawyers in those cases and therefore his discipline should be less than theirs. The Director relies on, among other cases, *In re Gurstel*, 540 N.W.2d 838, and *In re Oberhauser*, 679 N.W.2d 153, in support of the argument that the discipline recommended by the referee is appropriate in this case.

Based on our review of the record, the misconduct found by the referee, Moulton's disciplinary history, the aggravating and mitigating factors, and our case law, we conclude that the appropriate sanction for Moulton's misconduct is a 90–day suspension with conditions as recommended by the referee.

IT IS HEREBY ORDERED THAT:

1. Respondent Daniel J. Moulton is hereby suspended from the practice of law for a minimum of 90 days, commencing 14 days from the date of this opinion, with reinstatement subject to the conditions below. Respondent shall comply with the provisions of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

2. The provisions of Rule 18(a)-(d), RLPR (requiring a petition and hearing before this court for reinstatement), are hereby waived. Respondent shall comply with Rule 18(e), RLPR (requiring that respondent be current in continuing legal education requirements and successfully complete the professional responsibility portion of the state bar examination) as a condition of reinstatement, except that respondent shall have one year from the date of this opinion in which to successfully complete the professional responsibility portion of the state bar examination. Respondent may apply for reinstatement under Rule 18(f), RLPR, after 90 days from the date of this opinion by filing an affidavit with the Clerk of Appellate Courts and the Director attesting that: (1) respondent either has made an offer in compromise acceptable to the IRS or has entered into and remained in compliance with a repayment agreement with respect to the outstanding tax liabilities; (2) respondent has complied with the provisions of Rule 26, RLPR; (3) respondent has complied with the provisions of Rule 18(e)(2), RLPR (continuing legal education requirements); and (4) respondent has complied with the provisions of Rule 24, RLPR (requiring payment of costs and disbursements).

3. Following reinstatement respondent shall be placed on unsupervised probation for the longer of two years from the date of this opinion or until respondent has fully paid either: (1) all past-due employer withholding tax liabilities for the Moulton Law Office and any other businesses for which he is required to collect, account for, and pay over taxes under 26 U.S.C. §§ 6672 or 7202 (2000), or is personally liable for payment under Minn.Stat. § 270.101, subd. 1 (2004); or (2) any lesser amount agreed to by the applicable taxing authority.

4. Respondent shall remain current on all tax obligations to federal and state taxing authorities arising in the future, and on any payment agreements with such federal and state taxing authorities, until all past-due tax liabilities for which he is personally responsible have been paid.

5. Respondent shall cooperate fully with the Director's office in its efforts to

monitor compliance with this probation and shall promptly respond to the Director's correspondence by the due date. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify compliance with the terms of this probation.

6. Respondent shall affirmatively report to the Director, on or before the due date of the required return, his compliance with tax filing and payment requirements. Such reports shall include copies of the required returns. On or before the filing deadline, respondent shall provide the Director with copies of any applications for filing extensions. Respondent shall provide all of the documents and information required herein without specific reminder or request.

7. Respondent shall abide by the Minnesota Rules of Professional Conduct.

8. Respondent shall pay the sum of $900 in costs and disbursements.

So ordered.