In re Petition for DISCIPLINARY ACTION AGAINST Scott E. SELMER, a Minnesota Attorney, Registration No. 156024.

No. A06–2254.

Supreme Court of Minnesota.

May 22, 2008.

See also 636 N.W.2d 308.

Timothy Michael Burke, St. Paul, MN, for Petitioner OLPR.

Allen H. Gibas, Minneapolis, MN, for Respondent Selmer.

Laurie A. Savran, Minneapolis, MN, for Amicus Rosalie E. Wahl.

OPINION

PER CURIAM.

In November 2001, we placed Scott E. Selmer on supervised probation for 5 years subject to a number of conditions, including making good faith efforts to reduce or satisfy liens and judgments and paying an outstanding Wisconsin disciplinary judgment. On November 28, 2006, the Director of the Office of Lawyers Professional Responsibility ("Director") filed a petition seeking the revocation of Selmer's probation and imposition of further discipline. The petition identified three violations: failure to comply with the terms of probation in violation of Minn. R. Prof. Conduct 3.4(c), 8.1(a) and (b), and 8.4(c) and (d), and Rule 25, Rules on Lawyers Professional Responsibility (RLPR); failure to timely file individual income tax returns in violation of Minn. R. Prof. Conduct 8.4(b) and (d); and a fifth-degree assault conviction in violation of Minn. R. Prof. Conduct 8.4(b). Selmer answered the petition, and a hearing was held before a referee, who recommended that Selmer be released from probation with a public reprimand. We conclude that the appropriate discipline is a public reprimand and 1 year of unsupervised probation. Selmer will be automatically released from probation when he has submitted proof of payment of the Wisconsin disciplinary judgment. If Selmer has not satisfied the Wisconsin disciplinary judgment by the end of 1 year, Selmer will be automatically suspended from the practice of law until he has satisfied that judgment.

Selmer was admitted to the practice of law in Minnesota in 1984. In 1995, he was disciplined twice. He received a private admonition for improperly charging a client for copies of the client's file made for Selmer's own benefit. Additionally, Selmer was publicly reprimanded and put on probation for 2 years for the following

violations: failing to promptly provide an accounting of the distribution of an arbitration award, charging an unreasonable fee, abusing the discovery process, failing to maintain proper trust account books and records, falsely certifying that he maintained proper trust account records, and commingling personal and client funds. *In re Selmer*, 529 N.W.2d 684 (Minn.1995). After being privately admonished, publicly reprimanded, and placed on probation, Selmer was also subject to reciprocal disciplinary proceedings in Wisconsin, where he had been admitted to the bar in 1978, for the same conduct. *In re Selmer*, 195 Wis.2d 687, 538 N.W.2d 252 (1995). The Wisconsin Supreme Court publicly reprimanded Selmer and required him to submit his trust account records quarterly for a period of 2 years. *Id.* at 255. Selmer was also ordered to pay the costs stemming from the Wisconsin disciplinary proceeding. *Id.*

Approximately halfway through Selmer's 2–year probationary period, the Director filed a petition for revocation of probation and for further disciplinary action. *In re Selmer*, 568 N.W.2d 702, 702–03 (Minn.1997). Pursuant to this petition, we suspended Selmer in 1997 for 1 year for engaging in "a pattern of frivolous and harassing litigation" and a pattern of "repeated misrepresentation, nondisclosure and lack of candor" throughout the disciplinary process, and we required Selmer to petition for reinstatement. *Id.* at 704. The Wisconsin Supreme Court suspended Selmer for 1 year based on Selmer's misconduct in Minnesota. *In re Selmer*, 227 Wis.2d 85, 595 N.W.2d 373, 374–75 (1999). Selmer was ordered to pay the costs of the disciplinary proceedings in Wisconsin. *Id.* at 379–80.

On November 28, 2001, we reinstated Selmer to the practice of law and put him on probation for 5 years subject to a number of conditions.[1] *In re Selmer*, 636 N.W.2d 308, 309 (Minn.2001). These conditions included full cooperation with probation, compliance with the rules of professional conduct, supervision by and regular contact with a licensed attorney, various reporting requirements, initiation of proper office procedures, payment of the outstanding Wisconsin disciplinary judgment, good faith efforts to reduce or satisfy the liens and judgments against him, and creation of a business plan. *Id.* at 308–09. The judgments and liens against Selmer included past-due tax liabilities and a judgment from a civil suit in Hennepin County District Court ("Schurstein judgment"). Since his probation began, Selmer has met some of the conditions of his probation: he has satisfied the Schurstein judgment and his federal tax liens.

Since 2001, the Director has supervised Selmer's probation. The Director's supervision consisted primarily of written correspondence with Selmer. The Director requested a wide variety of information generally pertaining to the terms of Selmer's probation. Selmer frequently responded to the Director's requests late, but usually provided the information requested. Over the course of the probationary period, the Director's requests became more sweeping. For example, in one letter in the last year of Selmer's probation, the Director instructed him to provide detailed information of his monthly household income and expenses, including thorough documentation of 30 different income- and expense-related items.

Selmer frequently responded in writing by questioning the Director's authority to

---

1. In 2005, the Wisconsin Supreme Court reinstated Selmer to practice law in Wisconsin. *In re Selmer*, 282 Wis.2d 194, 698 N.W.2d 695, 697 (2005). Selmer was ordered to pay the costs of the disciplinary proceedings associated with his reinstatement. *Id.*

require such information. The relationship between Selmer and the Director during Selmer's probationary period was often strained, at best. Although Selmer frequently told the Director in writing that he did not think the Director had the authority to request certain types of information, Selmer did not request any modifications to the conditions of his probation.[2] Similarly, although the Director expressed frustration in his letters that Selmer did not always respond in a timely fashion, the Director did not seek revocation of Selmer's probation until just days before it was set to expire.

The Director's November 28, 2006, petition alleges three types of misconduct: (1) that Selmer failed to comply with the conditions of probation and made false statements to the Director; (2) that Selmer failed to timely file federal and state income tax returns; and (3) that Selmer committed fifth-degree assault when he punched a man who argued with Selmer's son at a school basketball game. Selmer filed an answer to the Director's petition denying that any violations warranted discipline, and we referred the matter to a referee for findings of fact and recommendations for disposition.

The referee found that Selmer furnished some, but not all of the information requested by the Director; Selmer failed to provide information showing compliance with the financial requirements of his probation; Selmer has no income; Selmer pleaded guilty to fifth-degree assault; and the Director did not prove that Selmer made false statements to the Director. The referee then concluded that Selmer violated the conditions of his probation.

The referee concluded that Selmer's misconduct was aggravated by his past history of discipline but was mitigated by his financial problems. The referee also stated that Selmer's violations hurt no clients, but rather affected only Selmer and his family. The referee recommended that Selmer receive a public reprimand and be released from probation. The Director subsequently ordered a transcript of the hearing before the referee.

 Because the Director has ordered a transcript of the referee hearing, the referee's findings "are not binding on this court." *In re Peterson,* 718 N.W.2d 849, 853 (Minn.2006); *see also* RLPR 14(e) (providing that if either respondent or the Director orders a transcript, the referee's findings of fact and conclusions of law are not conclusive). However, we will uphold a referee's factual findings if they have evidentiary support in the record and are not clearly erroneous. *In re Pinotti,* 585 N.W.2d 55, 62 (Minn.1998). A referee's findings are clearly erroneous when we are "left with the definite and firm conviction that a mistake has been made." *Peterson,* 718 N.W.2d at 853 (internal quotation marks omitted).

Although the parties submitted over 100 exhibits to the referee and the referee heard testimony from Selmer and other witnesses, the referee made very limited factual findings. The material findings made by the referee are that Selmer "furnished some, but not all, of the information requested by the Director"; that Selmer "failed to provide information showing compliance with the financial requirements

---

**2.** In October 2002, Selmer moved this court for permission to file Chapter 7 bankruptcy. We found "no basis on which to grant the motion." In our order, we stated that if Selmer wished to be relieved of any obligations under his probation, such a request would be "addressed only on a motion to modify the conditions of probation and based on an adequate record." Selmer did not file any motions to amend the conditions of probation, nor did he file bankruptcy.

of his probation"; and that Selmer "has had no ability to comply with the financial terms of his probation." The referee concluded that Selmer violated the terms of his probation, thus violating the rules of professional responsibility, and that Selmer's conviction for fifth-degree criminal assault violated Minn. R. Prof. Conduct 8.4(b). Finally, the referee recommended that Selmer be publicly reprimanded and released from probation based on the mitigating factor of Selmer's financial problems and the fact that Selmer's misconduct hurt no clients.

Upon review of the record, we conclude that the referee's very limited factual findings have evidentiary support in the record. The exhibits introduced at trial indisputably establish that on multiple occasions Selmer did not respond to the Director on time, that Selmer has not paid the Wisconsin disciplinary judgment, that he filed his individual income taxes late for 2 years, and that he was convicted of fifth-degree assault while on probation.

█ Furthermore, we conclude that, based on the referee's findings, Selmer's conduct violated the Minnesota Rules of Professional Conduct. Selmer's failure to respond to the Director's requests on time violated his probation, in violation of Rule 8.1(b).[3] His failure to pay the Wisconsin disciplinary judgment violates Rule 3.4(c).[4] Selmer's untimely filing of tax returns vio-

lates 8.4(d),[5] and his conviction for fifth-degree assault violates Rule 8.4(b).[6]

█ Because we agree that Selmer violated the terms of his probation and consequently the Minnesota Rules of Professional Conduct, we turn to the appropriate discipline to be imposed. The referee recommended that Selmer be publicly reprimanded and released from probation. "Although a referee's recommendation for discipline carries great weight," we have the ultimate responsibility for determining what discipline, if any, is appropriate. *In re Edinger*, 700 N.W.2d 462, 467 (Minn. 2005). In making this determination, we consider the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession, in addition to any aggravating or mitigating factors. *Id.* at 468. Prior cases involving similar misconduct provide guidance on the appropriate discipline to be imposed, but we "examine each case individually and impose sanctions based on unique circumstances of each case." *Id.*

Here, based on the factors discussed below, we conclude that the referee's recommendation that Selmer receive a public reprimand is appropriate in light of the violations committed, but that the referee's recommendation that Selmer be released from probation altogether is inappropriate in light of the fact that Selmer has not

---

**3.** Rule 8.1 states that "a lawyer * * * in connection with a disciplinary matter, shall not * * * (b) * * * knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Minn. R. Prof. Conduct 8.1.

**4.** Rule 3.4 states that "[a] lawyer shall not * * * (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Minn. R. Prof. Conduct 3.4.

**5.** Rule 8.4 states that "[I]t is professional misconduct for a lawyer to * * * (d) engage in conduct that is prejudicial to the administration of justice." Minn. R. Prof. Conduct 8.4.

**6.** Rule 8.4 states that "[I]t is professional misconduct for a lawyer to * * * (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Minn. R. Prof. Conduct 8.4.

fulfilled all of the probationary conditions we imposed in 2001.

### A. Nature of the Misconduct

Selmer failed to comply with the terms of his probation by not responding to all of the Director's requests on time and not satisfying the judgment against him stemming from the 1999 reciprocal Wisconsin disciplinary proceedings. Additionally, Selmer did not timely file his individual income tax returns for 2 tax years and committed the offense of fifth-degree assault during his probationary period.

### 1. Failure to Comply with Probation

■ The failure to cooperate with an investigation or with the disciplinary process is itself a separate act of professional misconduct. In re Milloy, 571 N.W.2d 39, 45 (Minn.1997); see also In re Thedens, 557 N.W.2d 344, 348–50 (Minn.1997) (suspending an attorney for 6 months for neglect of a client matter, multiple tax code violations, and noncooperation with the Director, which consisted of his failure to attend a panel hearing and habitually late responses to the Director's requests); In re Klemek, 446 N.W.2d 391, 391–92 (Minn. 1989) (suspending an attorney indefinitely for at least 6 months for failing to initiate timely contact with her probation supervisor, failing to provide information on her client files, failing to reply to the Director's letters, failing to attend two scheduled meetings with the Director, and neglecting client matters); In re Cartwright, 282 N.W.2d 548, 550, 552 (Minn.1979) (suspending an attorney for 6 months based in part on his noncompliance, which included repeatedly failing to respond to the Director's requests, ignoring "the bulk of the correspondence" from the Director, and failing to fulfill promises to cooperate with the Director). Attorneys who cooperate at least to some extent will not be sanctioned

as harshly as those who do not cooperate at all. See Milloy, 571 N.W.2d at 45.

■ Although we stress the importance of fully and openly cooperating with the disciplinary process, we conclude that Selmer's conduct did not rise to the level of noncooperation that has warranted suspensions in the past. Unlike the attorney suspended in Cartwright who repeatedly failed to respond to the Director's requests at all, Selmer regularly communicated with the Director's office, responding with either the requested information or questions about the Director's requests. We note that Selmer's responses were often late, in direct violation of our 2001 order, which required he respond by the due dates specified by the Director. Selmer, 636 N.W.2d at 308. But, much like the attorney in Thedens, Selmer did eventually provide nearly all of the information requested of him, and circumstances that mitigate his failure to do so more promptly exist, as discussed below. Furthermore, unlike the attorney we suspended in Klemek, Selmer maintained contact with his supervising attorney, initiated meetings with the Director, and did not miss any meetings with the Director or any hearings related to this matter. Because Selmer's noncompliance was not as significant as that of Cartwright, Thedens, or Klemek, we conclude that Selmer's lack of cooperation with the Director does not alone warrant suspension.

Additionally, the conditions of Selmer's probation required that he "make good faith efforts to reduce and/or satisfy all outstanding tax liens and civil judgments" and that he "provide the Director's Office with a repayment plan for satisfying his past-due tax liabilities and the Schurstein civil judgment." Selmer, 636 N.W.2d at 309. Within 5 years of his reinstatement, Selmer did provide the Director proof of satisfaction of the Schurstein civil judgment, but he did not provide the Director

with a plan for satisfying his past-due tax liabilities. However, in March 2006, the IRS accepted Selmer's offer in compromise to satisfy his federal tax liabilities, and Selmer has represented that on November 17, 2007, he satisfied his obligation under the IRS offer in compromise. Although Selmer did not meet this requirement within 5 years of our order, he has since met this condition of his reinstatement. Furthermore, although at the time of Selmer's 1997 discipline case there were a number of civil judgments against him, they are not at issue here.

Finally, Selmer's failure to satisfy his Wisconsin disciplinary judgment plainly violates the terms of his probation. Our order reinstating Selmer directed, as a condition of his reinstatement, that he "*shall* pay in full the outstanding Wisconsin disciplinary judgment before the conclusion of his probation." *Selmer,* 636 N.W.2d at 309 (emphasis added). We ordered that he provide proof of satisfaction of that judgment "at least six months prior to the end of his probationary period." *Id.* Selmer does not dispute that he still has not satisfied this judgment, and that violates our previous order.

We generally defer to the results of disciplinary proceedings in other states so long as "the procedure followed was in accord with due process and the discipline imposed was not in palpable error." *In re Morin,* 469 N.W.2d 714, 716–17 (Minn.1991); *see also* RLPR 12(d). The rationale is to ensure that a sanctioned attorney cannot "avoid the consequences of misconduct by moving his or her practice to another state." *Morin,* 469 N.W.2d at 717. Here, in keeping with this principle, the Wisconsin Supreme Court sanctioned Selmer for his misconduct in Minnesota. Just as we would not condone another state reinstating a Minnesota attorney to practice in its jurisdiction while in direct violation of our disciplinary order,

we do not knowingly permit attorneys in Minnesota to practice while in violation of a disciplinary order of another state's supreme court. This is Selmer's most serious violation.

### 2. Untimely Filing of Tax Returns

Failing to file tax returns is a violation of an attorney's oath and violates the rules of professional responsibility. *Thedens,* 557 N.W.2d at 348. We impose harsh discipline when tax violations result in criminal charges, *id.,* or when an attorney fails to file and pay employer taxes, *e.g., In re Moulton,* 721 N.W.2d 900, 905 (Minn.2006). *See also In re Doom,* 463 N.W.2d 499, 500 (Minn.1990). Additionally, the failure to file tax returns altogether is a more serious violation than a mere failure to timely file. *See Thedens,* 557 N.W.2d at 348 (noting that "[w]hen the violations have involved a mere failure to timely file, however, we have been far more lenient"). In cases of failure to timely file, we frequently impose a public reprimand and unsupervised probation, even when taxes are owed. *See, e.g., In re See,* 669 N.W.2d 602 (Minn.2003); *In re Rowe,* 583 N.W.2d 923 (Minn.1998); *In re Vaught,* 583 N.W.2d 924 (Minn.1998); *In re Carney,* 505 N.W.2d 588 (Minn.1993).

Here, Selmer does not dispute that he filed his 2001 state and federal individual tax returns late, having filed them in the spring of 2003. Selmer does not dispute that he filed his federal tax returns for 2002 late, as well, having filed them in May 2003. The record indicates that in 2001 Selmer did not have any taxable income. In 2002, Selmer did have taxable income, but sufficient estimated taxes were withheld from his paychecks or were paid quarterly so that no taxes were owed upon filing his returns. Thus, although Selmer's conduct violates Rule 8.4(d), we conclude that this violation is significantly less serious than those in which an attorney is faces criminal charges, fails to file alto-

gether, or owes back taxes. Therefore, we conclude that based on this violation alone, the discipline imposed should not be as serious as those cases in which an attorney fails to pay taxes that are, in fact, owed.

### 3. Fifth–Degree Assault

██ Rule 8.4 states that "[i]t is professional misconduct for a lawyer to * * * commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Minn. R. Prof. Conduct 8.4. Relying on *In re Stafford*, 373 N.W.2d 275 (Minn.1985), the Director argues that a misdemeanor assault conviction alone warrants public discipline. In *Stafford*, an attorney was publicly reprimanded for committing a fifth-degree assault directly related to the lawyer's practice of law; the lawyer struck opposing counsel during the course of representation of a client. *Id.* at 275. Here, unlike *Stafford*, there is no connection between Selmer's fifth-degree assault conviction for punching another man at a basketball game and his practice of law. Although lawyers are answerable to the entire criminal law and we do not condone law-breaking, Selmer's conduct in committing fifth-degree assault unrelated to the practice of law, standing alone, does not warrant public discipline.

### B. Cumulative Weight of the Disciplinary Violations

██ We consider the cumulative weight of all the violations committed to determine the appropriate discipline. *Edinger*, 700 N.W.2d at 468. Here, Selmer's violations are failing to respond promptly and thoroughly to all requests from the Director while on probation; failing to timely file individual income tax returns for 2 tax years in which no taxes were owed; committing misdemeanor assault; and failing to pay in full the outstanding Wisconsin disciplinary judgment. Furthermore, although Selmer has now satis-

fied his past-due tax liabilities, he did not provide a repayment plan during probation as dictated by our order. Although each of Selmer's individual violations considered alone is not substantial, when considered together, the violations warrant public discipline. *See, e.g., In re Nelson*, 733 N.W.2d 458, 464 (Minn.2007) (recognizing that the cumulative weight of violations " 'may compel severe discipline even when a single act standing alone would not have warranted such discipline' " (quoting *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004))).

### C. Harm to the Public and the Legal Profession

██ We consider both the harm to the public and the harm to the legal profession in determining an appropriate disciplinary sanction. *Edinger*, 700 N.W.2d at 468. This includes facts such as "the number of clients harmed [and] the extent of the clients' injuries." *In re Randall*, 562 N.W.2d 679, 683 (Minn.1997). Here, the referee found that Selmer's violations have hurt no clients and have hurt only Selmer and his family. The Director did not challenge these findings or allege that Selmer harmed clients, the public, or the legal profession. These factors weigh against disciplining Selmer, as the purpose of attorney discipline is "to protect the courts, the public, and the legal profession." *Nelson*, 733 N.W.2d at 465.

### D. Aggravating and Mitigating Circumstances

██ As the final step in determining the appropriate discipline, we consider aggravating and mitigating circumstances. *Edinger*, 700 N.W.2d at 468. Here, the referee listed Selmer's disciplinary history as an aggravating factor and Selmer's severe financial problems as a mitigating factor in determining the appropriate discipline. The Director argues that the referee did not adequately take into account

the fact that Selmer was on probation when the current violations occurred. The Director also suggests that Selmer's financial situation should either not be considered a mitigating factor or not mitigate anything other than the failure to meet the financial requirements of probation.

 Disciplinary history and violating the disciplinary rules while on probation are both aggravating factors in attorney discipline cases. *Moulton,* 721 N.W.2d at 905 (noting that a "violation of our disciplinary rules while on probation is a factor that warrants more significant punishment"); *Milloy,* 571 N.W.2d at 45 (noting that "[p]rior disciplinary action taken against an attorney is an aggravating factor"). Here, the bulk of Selmer's violations pertain to the conditions of probation themselves, and the other misconduct at issue—his failure to timely file tax returns when no taxes were owed and his conviction for fifth-degree assault—is less serious. These violations are aggravated, however, by Selmer's disciplinary history, which includes a private admonition, 2 years of probation, suspension for at least 1 year, and his current 5–year supervised probation. Although it is proper for the referee to consider these factors as aggravating factors, the record does not support the Director's characterization of Selmer's misconduct as escalating drastically while on probation. His earlier discipline cases involved such misconduct as commingling funds, failing to maintain proper trust account records, misrepresentation to the Director, and engaging in frivolous litigation. Selmer's current violations are far less serious than his prior misconduct.

Furthermore, Selmer's misconduct is mitigated by the financial strain he has experienced while on probation, as found by the referee. The record amply supports the referee's conclusion. Testimony by Selmer and his witnesses as well as exhibits offered by both the Director and Selmer establish that during his 5 years of probation, Selmer has not had enough money to provide for his family. His family has gone without needed medical and dental care, he is in arrears on his rent payments, and he has needed assistance to make utility payments. Furthermore, Selmer's financial situation had a direct impact on his ability to meet the requirements of his probation; testimony at the referee hearing showed that Selmer's inability to afford copying costs at times prevented him from timely complying with the Director's requests.

While we have held that financial hardship does not mitigate certain types of misconduct, such as conversion of client funds, *e.g., In re Parks,* 396 N.W.2d 560, 563 (Minn.1986), and does not alone preclude disbarment in cases of serious misconduct, *e.g., In re Olsen,* 487 N.W.2d 871, 875 (Minn.1992), we have not held that financial hardship is never a mitigating factor for misconduct. In a similar vein, we have held that personal turmoil, stress, and the emotional distress of divorce and child custody proceedings can all mitigate professional misconduct. *See, e.g., In re Wentzel,* 711 N.W.2d 516, 522 (Minn.2006); *In re Rooney,* 709 N.W.2d 263, 272 (Minn. 2006); *In re Heffernan,* 351 N.W.2d 13, 15 (Minn.1984). We concluded that Selmer's most serious violation of the terms of his probation was the failure to pay the Wisconsin disciplinary judgment, and Selmer's financial problems are a proper mitigating factor for that misconduct. Although we are mindful of the difficulty that condition of his reinstatement has presented to continue to practice law in the State of Minnesota, Selmer must comply with our previous orders.

Scott E. Selmer is hereby publicly reprimanded for failing to comply with the terms of his probation, failing to timely file individual income tax returns on which no taxes were due, and committing fifth-de-

gree assault unrelated to the practice of law. We place Selmer on unsupervised probation. If Selmer does not file with this court, and serve upon the Director, by 1 year from the date of this opinion proof that he has satisfied the Wisconsin disciplinary judgment, he shall be automatically suspended from the practice of law without further proceedings until such time as he provides the required proof to the court. While on unsupervised probation, Selmer shall comply with the Minnesota Rules of Professional Conduct and shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention.

It is so ordered.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.