**In re Petition for DISCIPLINARY AC-
TION AGAINST Scott E. SELMER, an
Attorney at Law of the State of Minne-
sota.**

No. C8–93–1638.

Supreme Court of Minnesota.

Sept. 11, 1997.

Marcia Johnson, Director of L.P.R., Patrick R. Burns, St. Paul, for Appellant.

Ronald Meshbesher, Minneapolis, for Respondent.

Amicus Curiae National Bar Association & Association of Black Lawyers Donald Lewis, Jerry Blackwell, Halleland Lewis Nilan Sipkins & Johnson, P.A., Allen Gibas, Minneapolis.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for revocation of probation and for further disciplinary action against respondent Scott E. Selmer alleging that he engaged in a pattern of harassing and frivolous litigation, that he made false and misleading statements in response to discovery requests and in pretrial proceedings, and that he failed to comply with proper discovery requests in violation of the Minnesota Rules of Professional Conduct (MRPC). *See* Rule 12(a), Rules on Lawyers Professional Responsibility (RLPR). The referee found that respondent had engaged in a pattern of frivolous and harassing conduct in violation of Rule 3.1, MRPC, when he filed a number of claims or counterclaims in separate proceedings alleging racial discrimination; that he failed to acknowledge the wrongful conduct of asserting claims without a factual basis; and that he knowingly offered false and misleading evidence in response to discovery requests by failing to

supplement incomplete and misleading responses during discovery, by failing to comply with proper discovery requests, by making false statements of fact in attempts to advance his own interests, and by engaging in dishonest conduct. The referee recommended that respondent be suspended from the practice of law for a period of not less than six months with conditions.

The parties have stipulated to an expungement of five designated words from the transcript of the proceedings at page 595 (line 6), and we approve of the expungement. In addition, the National Bar Association, the Minnesota Association of Black Lawyers, and Attorney Allen H. Gibas have moved the court to participate as amici curiae, and we grant their motions and have considered their submissions.

Respondent was admitted to practice law in the State of Minnesota on May 11, 1984. He has been disciplined by this court on two earlier occasions, one of which resulted in a public reprimand with two years' probation for respondent's failure to promptly provide an accounting; for his charge of and suit to collect an unreasonable fee; for his abuse of the discovery process in litigation against his client; for his failure to maintain proper trust account records; for his false certification that he had maintained those records; and for his commingling of personal and client funds. *In re Disciplinary Action against Selmer,* 529 N.W.2d 684 (Minn.1995). In that matter, we had the occasion to note that "[a]t the heart of this disciplinary matter is Selmer's misuse of the litigation process to harass his client; this is not a matter which could be settled in fee arbitration." Among the conditions imposed during the two-year period of probation were that respondent abide by the Rules of Professional Conduct and that he cooperate with the director's investigation "of any allegations of unprofessional conduct which may come to the Director's attention." The probationary period was due to expire on April 14, 1997, but on March 28, 1996, the director filed this petition for revocation and for further disciplinary action, alleging a "pattern of harassing and frivolous litigation" relating to respondent's assertion of claims of racial discrimination either in commencing litigation against or in defending claims asserted by his creditors.

The referee found that during the period from 1983 to 1995, respondent, acting individually or through his professional association, had been involved in at least 26 state or federal district court civil actions and that in 23 of those matters, respondent or his professional association was the defendant in creditors' actions to recover for goods received, loans extended, or services rendered. The referee focused his inquiry on eight of those matters which involved a personal loan to respondent by the State Bank of Hudson in the amount of $9,400; business loans totalling $109,178.43 obtained from First National Bank Association to operate his law practice; a home mortgage held by Fleet Real Estate; a Dayton's department store credit account of $3,013.17; respondent's failure to pay a court reporter a total of $2,539.40 for court reporting services provided on eight separate occasions; his failure to pay $3,195.40 in attorney fees to the attorney who represented him in disciplinary proceedings; his failure to pay the registration fee for a seminar he attended; and his failure to pay $2,077.85 for computer equipment delivered to his law office.

Litigation commenced by the various creditors or by respondent against them spanned a 12–year period, and the common theme of the unrelated actions was respondent's repeated assertion of a claim of racial discrimination as a sword or a shield to thwart legitimate efforts of the creditors to collect debts respondent has admitted he owed. The extensive record prompted the referee to observe that respondent's "conduct involves dishonest and selfish motives to the extent that [his] frivolous claims and counterclaims enabled [him] to delay the payment of, or obtain material reduction of, undisputed debts which he had voluntarily assumed." The referee further found that respondent refused to acknowledge the wrongful nature of his conduct—that of repeatedly asserting his race discrimination claim admittedly without any factual basis or any legal or decisional authority. The referee noted that throughout the hearing, the respondent re-

lied upon explanations such as his "general experiences as an African American" or the existence of news and magazine articles speaking generally of race discrimination, "the bulk of which had nothing to do with Respondent's claims and counterclaims."

While the referee recognized that the corporate defendants were not vulnerable victims of this misconduct, the referee nevertheless noted that they were "easy targets" when defending groundless, but public accusations and that they incurred litigation costs in defense of the frivolous claims. Just as this record demonstrates a pattern of frivolous and harassing litigation, a second pattern of misconduct also emerges—one characterized by repeated misrepresentation, nondisclosure and lack of candor throughout these proceedings.

■ Respondent first contends that the director has improperly involved Rule 12(a), to bypass the panel hearing mandated by Rule 9, RLPR, suggesting that most of the misconduct alleged in the instant proceeding occurred prior to the order for probation and that he has not, as a result, breached any condition of his probation. Moreover, he asserts that his due process rights have been violated by the summary procedures contemplated by the rule. He urges a strict reading of Rule 12(a) which provides in pertinent part as follows:

> When a lawyer is subject to a probation ordered by this Court and the Director concludes that the lawyer has breached the conditions of the probation *or committed additional serious · misconduct*, the Director may file with this court a petition for revocation of probation and further disciplinary action.

(Emphasis added).

The referee rejected respondent's contention, interpreting the use of the word "additional" in Rule 12(a) as suggestive of conduct in addition to that which served as the basis for the imposition of probationary status in the first instance. The referee could find no temporal limitation in the rule and refused to imply one and was satisfied that respondent had been provided with a "panoply of due process protections," including a hearing, discovery, access to the director's files, entitle-ment to cross-examination, and the right of review.

The referee's interpretation not only conveys the purpose of the rule, but also recognizes the rule's practical underpinning. In our experience, it is not uncommon, when an attorney has been publicly disciplined, for former clients to report additional matters to the director's attention. This is particularly the case when these previously undisclosed matters would allow the director to identify a pattern of conduct which, by its nature, requires the passage of time to develop. As we observed in *In re Selmer*, respondent misused the litigation process to harass his client, and here the record exhibits the same pattern of similar misuse of the litigation process and harassment, albeit of his creditors, not his clients. Rule 12(a) provides a procedural mechanism for essentially reopening these proceedings to address the problem on a larger scale.

■ Our review of the record supports the conclusion that the director has demonstrated by clear and convincing evidence that respondent has engaged in misconduct in violation of Rule 3.1 (the prohibition against asserting frivolous claims); 3.3(a)(4), MRPC, (the prohibition against offering evidence the lawyer knows to be false; 3.4(d)), MRPC, (the prohibition against making a frivolous discovery request or failing to make a reasonable, diligent effort to comply with a proper discovery request); 4.1, MRPC, (the prohibition against knowingly making a false statement of law or fact); 8.4(d), MRPC, (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice). Throughout these proceedings, respondent has acknowledged, however reluctantly, that he owed the various creditors the debts they tried to collect and that he asserted multiple claims of race discrimination without a factual or legal basis. Respondent has used his professional status and his race to avoid the legal obligations he incurred personally and for the benefit of his professional association. Moreover, he lacks credibility in attempting to justify or explain his conduct or his failure to provide full, accurate or complete informa-

tion on inquiry. We cannot countenance this abuse of the litigation process or the lack of candor respondent demonstrates and are convinced that the seriousness of this misconduct warrants the revocation of respondent's probation and the imposition of further sanctions.

In accordance with the foregoing, it is the judgment of this court that Scott E. Selmer be suspended from the practice of law for twelve months, beginning 14 days from the date of this order. Reinstatement shall be conditioned on compliance with the requirements of Rules 18 and 26, RLPR. If reinstated, respondent shall be on supervised probation for a period of five years. Respondent shall pay to the director the sum of $900 in costs pursuant to Rule 24, RLPR.

Twelve-month suspension from the practice of law.

PAGE, Justice (concurring in part, dissenting in part).

I concur in that part of the court's decision suspending Selmer and placing him on probation for a period of five years if and when he is reinstated to the practice of law. I respectfully disagree, however, with that part of the court's decision regarding the length of Selmer's suspension. In my view, the court's decision suspending Selmer from the practice of law for 12 months goes beyond what is necessary to protect the public, guard the administration of justice, and deter future misconduct. *See In re Jensen,* 418 N.W.2d 721, 722 (Minn.1988). The more appropriate sanction would be to suspend Selmer from the practice of law for six months and to condition his reinstatement on an appropriate psychological evaluation and completion of any recommended treatment, in addition to the requirement that he comply with Rules 18 and 26, Rules on Lawyers Professional Responsibility. Further, I would require Selmer's probation to be supervised and would prohibit him from filing any lawsuit on his own behalf while on probation without the consent of his supervising attorney.

Therefore, I concur in part and dissent in part.