STATE OF MINNESOTA

IN SUPREME COURT

A14-0098

Original Jurisdiction

Per Curiam
Took no part, Page, J.

In re Petition for Disciplinary Action
against Scott Selmer, a Minnesota Attorney,
Registration No. 156024

Filed: July 15, 2015
Office of Appellate Courts

_____

Martin A. Cole, Director, Patrick R. Burns, First Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Scott Selmer, Minneapolis, Minnesota, pro se.

_____

S Y L L A B U S

The referee's determination that respondent engaged in professional misconduct through a pattern of frivolous and harassing litigation, a failure to obey court orders, and a failure to comply with legally proper discovery requests was not clearly erroneous. Based on the misconduct and the aggravating factors, the appropriate discipline is an indefinite suspension, with no right to petition for reinstatement for a minimum of 12 months.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Scott Selmer, alleging that Selmer committed professional misconduct by engaging in a pattern of harassing and frivolous litigation, failing to abide by court orders, and refusing to comply with discovery requests. Following an evidentiary hearing, the referee found that Selmer violated Minn. R. Prof. Conduct 1.1, 3.1, 3.4(c), 3.4(d), and 8.4(d) and that several aggravating factors were present. The referee recommended a suspension for a minimum of 12 months. We conclude that the referee's findings and conclusions are not clearly erroneous and that an indefinite suspension with no right to petition for reinstatement for a minimum of 12 months is the appropriate discipline for this misconduct.

Selmer was first licensed to practice law in Minnesota in 1984. We have imposed discipline on Selmer on four prior occasions. In 1995 we publicly reprimanded Selmer and placed him on probation for several violations, including abusing the discovery process. *In re Selmer*, 529 N.W.2d 684, 685 (Minn. 1995). In 1995 we also affirmed an admonition issued to Selmer for improperly charging a client. In 1997 we suspended Selmer for engaging in a pattern of harassing and frivolous litigation and failing to comply with discovery requests. *In re Selmer*, 568 N.W.2d 702, 704-05 (Minn. 1997). Finally, in 2008, we publicly reprimanded Selmer and placed him on probation in part for failing to pay a judgment entered against him. *In re Selmer*, 749 N.W.2d 30, 33 (Minn. 2008).

On January 7, 2008, the St. Paul Urban League ("SPUL") hired Selmer as president and chief executive officer. In February 2011 the SPUL suspended operations due to "severe fiscal and other mismanagement." Subsequently, Selmer, the SPUL, and various SPUL constituents became involved in multiple lawsuits spanning a significant number of court files. The Director filed this petition for disciplinary action against Selmer in January 2014 for his conduct in that litigation. Selmer filed a timely answer to the petition, and we appointed a referee.

Following an evidentiary hearing, the referee issued findings of fact, conclusions, and a recommendation for discipline. We turn now to a discussion of those findings and conclusions.

*Selmer v. Wilson matter*

On December 14, 2011, Selmer filed a complaint against W.M.W. with the Hennepin County District Court alleging that W.M.W. published and distributed false statements about Selmer. On February 29, 2012, the district court ordered the parties to file informational statements with the court before March 16, 2012, and also stated that failure to file the statements would result in a dismissal with prejudice. Both parties missed the March 16 deadline, and on April 2, 2012, the district court dismissed the complaint with prejudice. Selmer subsequently brought a motion to vacate the dismissal. At the hearing on the motion, Selmer admitted that he did not read the February order requiring him to file an informational statement until after the deadline had passed. The district court determined that Selmer's mistake should not jeopardize the entire case and issued an order vacating the dismissal, conditioned on Selmer paying $2,400 in sanctions.

Selmer has neither paid the sanctions nor taken any action to advance the litigation at the district court.

On August 13, 2012, Selmer appealed the district court's order that conditioned the reinstatement of the case on his payment of sanctions. The Clerk of the Appellate Courts notified Selmer of several deficiencies in his appeal, including the failure to include an original signature on the statement of the case and that the affidavit of service incorrectly stated the date the notice of appeal was served. On August 30, 2012, the court of appeals issued an order directing Selmer to correct those deficiencies and to file a copy of the district court's order granting his application to proceed *in forma pauperis* ("IFP"), as well as a completed transcript certificate. When Selmer failed to correct the deficiencies, the court of appeals dismissed the appeal.

Selmer then filed a petition for review and an IFP motion with our court. On October 29, 2012, the clerk's office notified Selmer that it could not accept his petition for review because it was single-spaced and did not include a notarized affidavit of service. The clerk's office also asked Selmer to correct the caption in his IFP motion and gave him 7 days to refile the corrected documents. Selmer never corrected his petition for review or IFP motion.

Selmer also filed a motion to reinstate his appeal with the court of appeals, which the court denied. In the order denying the motion, the court noted that Selmer had not corrected the filing deficiencies and had failed to timely order the transcript. Selmer claimed that he had not received the notice of the case filing or the order requiring him to correct filing deficiencies; the court noted, however, that the clerk had sent e-mail

notifications to the address Selmer provided. The court concluded that Selmer's "claim that he had no notice of the filing deficiencies is not credible." *Selmer v. Wilson*, No. A12-1418, Order at 2 (Minn. App. filed Nov. 29, 2012). Selmer testified at the evidentiary hearing that he did not see the notices and orders directing him to correct filing deficiencies, an argument that the referee also determined was "not credible."

*Wilson v. Selmer matter*

In a separate matter, W.M.W. and W.W. filed a lawsuit in Ramsey County District Court against Selmer and other members of the SPUL, claiming, among other things, that Selmer had breached his fiduciary duties to the SPUL. Selmer filed an answer with sections labeled "affirmative defenses" and "counter claim." Selmer's counterclaim stated that the SPUL deprived Selmer of his "right to receive a salary." The other defendants settled with the plaintiffs. On July 27, 2012, the district court issued an order stating it would continue to exercise jurisdiction over Selmer's remaining counterclaim against the SPUL. On that same day, Selmer filed a complaint in Hennepin County District Court against the SPUL seeking the same relief as the counterclaim.

On August 7, 2012, the plaintiffs served Selmer with a set of interrogatories and requests for production of documents, captioned as venued in Ramsey County. Selmer intentionally refused to respond to the requests, stating that the proper venue was Hennepin County. The Ramsey County District Court then issued an order enjoining Selmer from proceeding with the action in Hennepin County, noting that it was "troubling" that Selmer had filed suit in Hennepin County on the same claim.

On October 16, 2012, the plaintiffs served Selmer with requests for admissions. Having received no response to any discovery requests, the plaintiffs e-mailed Selmer demanding a reply. Selmer's response was that he "d[id] not intend to respond to discovery that is not in the proper venue of Hennepin County." The plaintiffs moved the Hennepin County District Court to transfer Selmer's suit to Ramsey County, and the district court granted the motion. On December 14, 2012, the Ramsey County District Court ordered Selmer to respond to the discovery requests and awarded costs and fees as a sanction against Selmer. Selmer again intentionally refused to comply with the discovery requests.

On March 15, 2013, the Ramsey County District Court held a settlement conference at which Selmer stated that he would like to bring a formal motion to remove the judge because she was "bigoted and biased against [him]," and that the matter should be dismissed because the court did not have subject matter jurisdiction. Selmer never brought formal motions to dismiss or to remove the judge.

Selmer then filed a voluntary dismissal of his counterclaim, stating that he had not filed a counterclaim and asking that any claim "the court believes he has [made]" be dismissed.[1] On May 8, 2013, the plaintiffs brought a motion to dismiss Selmer's counterclaim for failure to comply with discovery requests. Selmer refused to attend the hearing on the motion because he believed the court lacked jurisdiction. On June 10,

---

[1] Selmer's motion to voluntarily dismiss did not comply with Minn. R. Civ. P. 41.01(a), because the plaintiffs did not stipulate to the dismissal and a reply to the counterclaim had already been filed when he filed the motion to dismiss it. *See id.*

6

2013, the Ramsey County District Court dismissed Selmer's counterclaim with prejudice and entered judgment against Selmer in the amount of $8,912. A different Ramsey County District Court judge then dismissed Selmer's separate lawsuit against the SPUL, holding that the action was barred by res judicata and collateral estoppel.

Throughout that litigation, Selmer filed multiple notices of appeal with the court of appeals. First, on March 16, 2012, Selmer sought review of an order granting a temporary restraining order and an order finding subject matter jurisdiction. Selmer also filed an IFP motion in that appeal. The district court and the court of appeals denied the IFP motion, stating that the appeal was frivolous. The court of appeals dismissed the appeal "as taken from interlocutory, nonappealable orders." *Wilson v. Selmer*, No. A12-484, Order at 3 (Minn. App. filed Apr. 26, 2012).

On March 22, 2012, Selmer filed a petition for writs of prohibition and mandamus with the court of appeals seeking to stop an evidentiary hearing, dissolve the restraining order, require the plaintiffs to post a bond, and dismiss the plaintiffs' complaint for lack of subject matter jurisdiction. On April 12, 2012, the court of appeals ordered Selmer to file additional copies of the petition, serve the petition on the plaintiffs, and pay the filing fee. One month later, the court denied the petition in its entirety stating that Selmer had not established that the issues were ripe for review or that "the ordinary remedy of a direct appeal from an order denying relief would be inadequate." *Wilson v. Selmer*, No. A12-535, Order at 2 (Minn. App. filed May 15, 2012).

On June 8, 2012, Selmer filed another notice of appeal referencing an order filed on June 6, 2012. The court of appeals dismissed the appeal, noting that Selmer did not

7

pay the filing fee or file an IFP motion, that there was no order issued on June 6, 2012, and that Selmer failed to provide a transcript of the scheduling conference that took place on June 6. *Wilson v. Selmer*, No. A12-990, Order at 2-3 (Minn. App. filed June 14, 2012).

Finally, on September 28, 2012, Selmer filed a notice of appeal seeking review of several orders and arguing that the district court lacked jurisdiction. The court of appeals dismissed the appeal as moot, noting that the plaintiffs' claims had settled. *Wilson v. Selmer*, No. A12-1740, 2013 WL 1188032, at *1 (Minn. App. Mar. 25, 2013). Selmer then petitioned our court for review of that court of appeals decision. We directed Selmer to file an affidavit of service for the petition for review and IFP motion, and when Selmer failed to comply, we dismissed his petition for review.

*Selmer v. State matter*

In July 2012 Selmer also filed an action in the United States District Court for the District of Minnesota, naming the State of Minnesota, County of Ramsey, Judge Margaret Marrinan, W.M.W., and W.W. as defendants. Selmer sought $500,000 "for denial of his Constitutional rights to equal protection, due process, race discrimination and deprivation of his property rights." The court dismissed Selmer's complaint with prejudice the next day, concluding that the complaint was frivolous and intended to harass.

The referee determined that Selmer's conduct "in engaging in a pattern of frivolous and harassing litigation, failing to abide by court orders, and failing to comply with legally proper discovery requests, violated Rules 1.1, 3.1, 3.4(c), 3.4(d), and 8.4(d)."

8

Selmer challenges several of the referee's factual findings. Selmer also challenges the referee's conclusion that he violated the rules of professional conduct. Selmer asks this court to dismiss all charges of misconduct.

I.

In a disciplinary proceeding, the Director has the "burden of proving by clear and convincing evidence that the respondent violated the Rules of Professional Conduct." *In re Grigsby*, 764 N.W.2d 54, 60 (Minn. 2009). When a party to a disciplinary proceeding orders a transcript, the referee's findings of fact and conclusions of law are not conclusive. *Id.* We do, however, give "great deference" to the referee's findings and uphold those findings "unless they are clearly erroneous." *In re Wentzell*, 656 N.W.2d 402, 405 (Minn. 2003). A finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *Id.* (citation omitted) (internal quotation marks omitted). If there is evidence in the record to support a referee's finding, the findings are not clearly erroneous. *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010). We review the interpretation of the Minnesota Rules of Professional Conduct de novo, but we review the application of those rules to the facts for clear error.[2] *In re Michael*, 836 N.W.2d 753, 761 (Minn. 2013).

---

[2]     Selmer contends that the de novo standard of review is applicable in this case. It is well settled, however, that although we retain the final responsibility for determining the appropriate discipline, we give great deference to a referee's findings. *In re Nelson*, 733 N.W.2d 458, 461 (Minn. 2007). We therefore review the referee's findings and his conclusions that Selmer's conduct violated several rules of professional conduct for clear error. *See id.*

9

We first address Selmer's challenges to the referee's findings of fact. Selmer ordered a transcript, so we review the referee's findings for clear error. *See In re Wentzell*, 656 N.W.2d at 405. Selmer challenges the referee's finding that he asserted a counterclaim in the *Wilson v. Selmer* action, that he failed to bring a motion to dismiss for lack of subject matter jurisdiction, and that he asked for money damages in his federal lawsuit. Because there is evidence in the record to support the referee's findings, we conclude the referee's findings are not clearly erroneous.

We begin with the referee's finding that Selmer asserted a counterclaim in the *Wilson v. Selmer* matter. Selmer labeled his assertion about his salary as a "counter claim" in his amended answer. Selmer now contends that he intended to assert the affirmative defense of "unclean hands," but mislabeled it as a counterclaim. In a notice of appeal, however, Selmer stated that he "ha[d] [a] legal [sic] asserted salary and compensation claim against the St. Paul Urban League." In addition, the Ramsey and Hennepin County district courts, the court of appeals, and the attorney for the other defendants in the case concluded that Selmer had asserted a counterclaim. We recognize that the district court could have determined that Selmer mislabeled his claim and treated his pleading as though he had designated the claim as an affirmative defense under Minn. R. Civ. P. 8.03. Ultimately, however, there is evidence in the record supporting the referee's finding that Selmer asserted a counterclaim, and this finding is not clearly erroneous.

Selmer also disputes the referee's finding that he never brought a formal motion to dismiss the *Wilson v. Selmer* matter based on a lack of subject matter jurisdiction. Specifically, in his reply brief, Selmer argues that he made a motion to dismiss through attorney Neil Shapiro. Selmer contends that Shapiro was representing him at that time. The document Selmer refers to is not a formal motion to dismiss, but rather a "Memorandum in Opposition of Plaintiffs' Motion to Appoint a Receiver." In addition, Shapiro is listed on the document as "Attorney for Defendants Jefferson, Quast, Mische, Seifert, and Moore." Shapiro, therefore, did not bring a formal motion to dismiss and nothing in the document supports Selmer's claim that Shapiro was making the motion on Selmer's behalf at the time the relevant memorandum was filed. Based on the record, we conclude that the referee's finding was not clearly erroneous.

Finally, Selmer contends that the referee erred in finding that he had asserted a claim for money damages in his federal lawsuit. Selmer's federal complaint, signed by him, requested money damages, stating that "Plaintiffs pray for joint and several relief in a sum in excess of five-hundred thousand dollars . . . ." The evidence supports the referee's finding that Selmer's federal complaint sought monetary damages.

In summary, we conclude that the referee's findings of fact are not clearly erroneous.

11

III.

We turn next to Selmer's challenges to the referee's conclusion that he violated

Minnesota Rules of Professional Conduct 1.1,[3] 3.1,[4] 3.4(c),[5] 3.4(d),[6] and 8.4(d).[7] Selmer

argues that he did not violate any of these rules of conduct, because he believed the

district court in the *Wilson v. Selmer* matter lacked subject matter jurisdiction and

therefore he had a good faith basis in law for his actions, including failing to obey court

orders.

Specifically, with regard to Rule 3.1, Selmer asserts that he had a basis in law and

fact for his assertion that the district court lacked subject matter jurisdiction. He further

argues that the referee "disregarded" the issue of whether the district court had subject

matter jurisdiction and therefore committed a "clear error of law." The Director,

however, did not charge Selmer with misconduct on the basis of Selmer's assertion that

the district court lacked jurisdiction. Instead, the Director charged, and the referee

---

[3]    Rule 1.1 requires that an attorney "provide competent representation."

[4]    Rule 3.1 states that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."

[5]    Rule 3.4(c) prohibits an attorney from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

[6]    Rule 3.4(d) prohibits an attorney from failing "to make a reasonably diligent effort to comply with a legally proper discovery request."

[7]    Rule 8.4(d) provides that an attorney may not "engage in conduct that is prejudicial to the administration of justice."

12

concluded, that Selmer's conduct in bringing various other complaints and appeals was frivolous. Selmer offers no basis in law to support filing a separate action in Hennepin County, appealing matters not ripe for review, or filing his federal complaint. Our review of the record therefore supports the referee's conclusion.

Selmer next argues that because he believed the district court lacked subject matter jurisdiction, and "consistently asserted" his belief, no valid obligation existed to obey court orders or respond to discovery requests under Rules 3.4(c) and 3.4(d). He also contends that because he believed no valid obligation existed, he did not violate Rule 8.4(d). We disagree. Selmer does not claim that the court of appeals or our court lacked subject matter jurisdiction and offers no reason why he did not have an obligation to correct appellate filing deficiencies. Similarly, he does not challenge the subject matter jurisdiction of the Hennepin County District Court that ordered him to file an informational statement in the *Selmer v. Wilson* matter. And regardless of the various excuses offered by Selmer, ultimately, he failed to bring a formal motion to dismiss in Ramsey County District Court based on a lack of jurisdiction. He also refused to appear at the various discovery hearings to assert his claim that a valid obligation did not exist. We therefore hold that the referee's conclusion that Selmer violated Rules 3.4(c), 3.4(d), and 8.4(d) was not clearly erroneous.

In summary, we hold that the referee's findings and conclusions that Selmer violated Minn. R. Prof. Conduct 1.1, 3.1, 3.4(c), 3.4(d), and 8.4(d) were not clearly erroneous.

IV.

The only remaining question is the appropriate discipline for Selmer's misconduct. The referee recommended that Selmer be indefinitely suspended from the practice of law for a minimum of 12 months. Selmer did not address the recommended discipline in his briefs. The Director asks us to adopt the referee's recommendation.

The purpose of disciplinary sanctions "is not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Waite*, 782 N.W.2d 820, 827 (Minn. 2010). We give "great weight" to the referee's recommendation, but we "maintain the ultimate responsibility for determining the appropriate sanction." *In re Greenman*, 860 N.W.2d 368, 376 (Minn. 2015) (citation omitted) (internal quotation marks omitted). In imposing discipline, four factors guide our analysis: (1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012). We consider similar cases for guidance, but "[d]iscipline is imposed on a case-by-case basis after consideration of both aggravating and mitigating circumstances." *Id.*

We begin with the four factors. Selmer's misconduct was serious. His dispute with the SPUL spanned a significant number of court files at the state district, federal district, and state appellate levels, all of which were dismissed based either on the frivolity of Selmer's arguments or because Selmer failed to comply with court rules. We

14

have held that such an abuse of the litigation process constitutes "serious" misconduct. *See In re Murrin*, 821 N.W.2d 195, 207 (Minn. 2012).

In considering the cumulative weight of the violations, we have stated that the weight and severity of multiple rule violations over time "may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). Selmer's rule violations occurred in multiple court cases from August 2011 through June 2013. Selmer's misconduct was therefore not a "single, isolated incident," but included multiple instances of misconduct over several years. *See In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011).

In addition, Selmer's conduct harmed the public and the legal profession. Failure to follow court rules undermines public confidence in the legal system and frivolous claims are a waste of court resources. *In re Ulanowski*, 800 N.W.2d 785, 801 (Minn. 2011). By engaging in a pattern of frivolous litigation and violations of court rules and orders, Selmer harmed the public and legal profession.

We next consider the existence of mitigating and aggravating factors. The referee did not find any mitigating factors, and Selmer does not dispute that aspect of the referee's findings.

The referee found several aggravating factors, and Selmer does not specifically challenge those findings. We have disciplined Selmer on four prior occasions. *See In re Lundeen*, 811 N.W.2d at 609 ("A lawyer's prior disciplinary history is an aggravating factor."). The discipline we imposed in 1995 and 1997 was for abusing the discovery process and engaging in a pattern of harassing and frivolous litigation. Both proceedings

15

involved rule violations similar to those currently before us, which aggravates his misconduct. *See id.* ("[W]e generally impose more severe sanctions when the current misconduct is similar to the misconduct for which an attorney has already been disciplined."). And Selmer expresses no remorse and refuses to acknowledge any wrongdoing. *See In re Rebeau*, 787 N.W.2d 168, 176 (Minn. 2010) ("The lack of remorse also constitutes an aggravating circumstance.").

Finally, we consider similar cases. Here, one of Selmer's own previous discipline cases is instructive. We previously suspended Selmer for 12 months after he engaged in a pattern of harassing and frivolous litigation, including filing several frivolous claims and knowingly offering false and misleading evidence in response to discovery requests. *In re Selmer*, 568 N.W.2d 702, 704-05 (Minn. 1997). The pattern of frivolous claims, which we held was an "abuse of the litigation process," is similar to the pattern of frivolous claims at issue here. *See id.* at 705. And the discipline we imposed in that case is the same as the referee recommended here. *See id.*

In conclusion, we agree with the referee's determination that a 12-month suspension is the appropriate discipline for Selmer.

Accordingly, we order that:

1. Respondent Scott Selmer is suspended from the practice of law, effective 14 days from the date of the filing of this opinion, with no right to petition for reinstatement for 12 months from the effective date of the suspension.

16

2.      Respondent shall pay $900 in costs pursuant to Rule 24, Minnesota Rules on Lawyers Professional Responsibility ("RLPR"), and shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.      Prior to petitioning for reinstatement, respondent shall make a good faith effort to satisfy the outstanding $11,312 in court-ordered sanctions and costs in the *Selmer v. Wilson* and *Wilson v. Selmer* matters.  Respondent shall provide the Director with a payment plan for satisfying the judgments against him.

4.      Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR.  Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements pursuant to Rule 18(e), RLPR.


PAGE, J., took no part in the consideration or decision of this case.