STATE OF MINNESOTA

IN SUPREME COURT

A23-0047

Original Jurisdiction

In re Petition for Disciplinary Action against
Richard S. Langree, a Minnesota Attorney,
Registration No. 0234229.

Per Curiam
Took no part, Hennesy, J.

Filed: July 10, 2024
Office of Appellate Courts

_____

Susan M. Humiston, Director, Joanna Labastida, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Richard S. Langree, Minneapolis, Minnesota, pro se.

_____

S Y L L A B U S

A 40-day suspension with a requirement to petition for reinstatement is the
appropriate discipline for an attorney who has demonstrated a lack of requisite legal skills,
asserted numerous frivolous claims, knowingly disobeyed an obligation under the rules of
a tribunal, purposely delayed the judicial proceedings, engaged in conduct intended to
disrupt a tribunal, and engaged in behavior that was ultimately prejudicial to the
administration of justice—and who has shown a likelihood to continue the misconduct in
the future.

Suspended.

1

# O P I N I O N

PER CURIAM.

The Director (Director) of the Office of Lawyers Professional Responsibility (OLPR) filed a petition for disciplinary action against respondent Richard Stephen Langree, alleging various and repeated professional misconduct related to a single matter. A referee was appointed and he held an evidentiary hearing. The referee found that in a family law matter, Langree had engaged in a pattern of filing untimely, frivolous, or otherwise improper motions and appeals and that he had intended to disrupt the tribunal and burden the opposing party. The referee further found that some of the professional misconduct Langree engaged in continued through the disciplinary process. The referee found three aggravating factors and one mitigating factor. Based on the findings and conclusions, the referee recommended Langree be suspended from practice for a minimum of 40 days. The Director urges a slightly longer 60-day suspension subject to 2 years of supervised probation.

Langree makes no arguments regarding the measure of discipline recommended by the referee or the Director. He obliquely attempts to contest the referee's findings of fact by making frivolous motions to both us and to the referee, accusing nearly everyone involved in the underlying family law matter and in these disciplinary proceedings of being corrupt or behaving unethically. Considering the facts and circumstances of the case, we conclude that the recommended discipline is insufficient to protect the public, protect the legal profession, and deter future misconduct. Accordingly, the appropriate discipline for

2

Langree's misconduct is a 40-day suspension with a requirement to petition for reinstatement—a condition typically not required for suspensions of fewer than 90 days.

**FACTS**

Langree began practicing law in Minnesota in 1993 after moving to the state from California, where he had worked as a public defender. Langree has extensive experience in family law and child protection matters; he testified that he practices law "for the community" by charging sliding fees or doing his work pro bono. The misconduct here arises from a single child custody matter that took place between 2018 and 2022. We address the facts of that matter below.

*Custody Matter*

In 2010, a married couple (Father and Mother), neither of whom had legal representation, filed a joint petition for marriage dissolution with children. Father and Mother had a single child. Langree claims to have known the family since around the time of the divorce.

In 2018, Father retained Langree to attempt to modify the stipulated child custody arrangement and child support. The motion to change custody alleged that the child was being physically and verbally abused, so the assigned district court judge appointed a guardian ad litem (GAL) in June 2018. Four months later, the GAL filed a report on the matter. At the hearing to discuss the report, Langree objected to the report as incomplete and led the court to believe that three specific healthcare providers—whose input was essential to the issue—had not been consulted by the GAL before preparation of the report. The court continued the matter for 2 months to allow the GAL to consult with those

3

providers and potentially amend her report. The GAL then learned that she actually *had* contacted these providers before the report's preparation, with two providers mentioned by name in the report. Accordingly, the GAL filed an amended report with recommendations.

Two days before the rescheduled hearing, Langree filed two emergency motions: 1) to remove the GAL; and 2) to temporarily change parenting time. Those motions were both procedurally deficient, so the court did not consider them at the hearing at which the court issued an order expressly following the recommendations of the GAL. Two months later, Langree filed motions to vacate the court's order, to change parenting time and legal custody, and to remove and replace the GAL for cause. Several of these motions were duplicative or procedurally deficient. A month later—March 2019—Langree filed two emergency motions to ban international travel for the child and to prohibit the child from being taken out of the country. The court denied these motions because there was no evidence the child was in any danger, no circumstances warranting emergency relief, and relief would have been available in the ordinary course were it not for Father's own delays in complying with court orders.

In April 2019, the court issued an order scheduling a June hearing to discuss the preliminary arguments on the parties' motions to change custody (the original issue in the case), along with five of Father's motions and two of Mother's motions. Five days before that scheduled hearing, Langree filed a motion to disqualify the presiding judge and a motion to continue the issues listed in the court's order for hearing. Because of the motion to disqualify, the matters upon which the hearing was to focus were rescheduled until after the removal decision. Langree's removal motion was heard and denied. Langree then filed

4

for reconsideration of his motion, and a month later, the chief judge of the district where the case was filed denied the removal motion.

An order for hearing was then issued setting a September 2019 date to discuss Mother's motions to quash two subpoenas served by Langree and to address the issue of attorney's fees. Time permitting, the court intended to hear preliminary arguments on the foundational custody issue, Father's numerous other motions, and one motion from Mother. A week before that scheduled hearing, Langree filed a petition for a writ of mandamus and prohibition[1] with the court of appeals, seeking to revoke many of the district court's orders and asking the court of appeals to direct the district court to take various actions. Three days later, Langree wrote a letter to the court of appeals seeking an extension, claiming to have become very ill, which caused him to submit only "draft" versions of his documents. The court of appeals dismissed the petition for the writs of mandamus and prohibition without prejudice, citing Langree's request to file new documents. Due to these events with the court of appeals, the district court had rescheduled the September hearing for December.

A month before the rescheduled hearing, Langree refiled a petition for writs of mandamus and prohibition with the court of appeals asking for the same relief as the previous filing. Consequently, the district court's hearing was again delayed. The court of appeals denied Langree's writ petition, finding no extraordinary or emergency situation

---

[1]    Writs of mandamus and prohibition are "extraordinary" writs to be used only when the judicial system offers "no other adequate remedy" at law. *Klapmeier v. Cirrus Industries, Inc.*, 900 N.W.2d 386, 392 (Minn. 2017); *see also* Minn. Stat. § 586.02 (2022) (mandamus), Minn. R. Civ. App. P. 120 (prohibition).

5

and observing that many of the arguments either lacked merit or were not properly before the court. The court of appeals also noted that Langree had not cited to or applied any relevant legal standards in the petition.

Having regained jurisdiction, the district court then set a new hearing for April 2020, limited to specific motions. However, Langree's subsequent submissions to the court included six additional issues beyond those contained in the limiting instructions. Furthermore, these filings referenced the recent court of appeals decision on the requested extraordinary writs and stated "[w]here a court of appeals has made a ruling which is clearly erroneous, the District Court is not bound to follow it," and that the court of appeals' analysis "can also be ignored." The district court found that Langree's actions "showed bad faith and intent to prolong the proceedings" and that his behavior had caused numerous delays "by filing motions mere days before, and in one case the day of, a scheduled hearing."

At that point, the district court allowed Mother to submit an affidavit regarding the attorney's fees she had accrued throughout the proceeding. Mother's attorney filed the affidavit in support of a claim for $32,907 in attorney's fees. In July 2020, Langree filed another, largely duplicative motion. When denying the motion, the district court cautioned Langree against "further lengthy unsolicited pleadings as they may be considered to contribute to the length and cost of [the] proceedings." A month later, the district court issued an order for Father to pay the requested $32,906.96 in "conduct-based attorney's fees." In October 2020, heedless of the district court's warning, Langree filed an

6

emergency motion that was, again, duplicative of an issue that had already been addressed—which was, again, denied.

Four days later, Langree appealed the award of attorney's fees to the court of appeals. Because no final judgment had yet been entered in the case below, the court of appeals dismissed Langree's appeal as premature. In December 2020, Langree filed another appeal with the court of appeals seeking: 1) review of the district court's rulings; 2) review of the court of appeals' own ruling on the petition for writs of mandamus and prohibition; and 3) court of appeals intervention in the district court case. The court of appeals dismissed this appeal as premature as well.

In January 2021, Langree filed a petition for review with our court seeking review of all three court of appeals decisions in the custody matter. Because the petition for review was filed more than 30 days after two of those decisions, we dismissed the petition as untimely with respect to those decisions. We denied the petition for review with respect to the third decision.

Shortly thereafter—nearly 3 years after Langree began representing Father—the district court judge who had been presiding over the custody case rotated out of the family court, and a new judge was assigned. Langree filed to remove that judge and a family court referee was ultimately assigned.[2]

---

[2] There is a gap in the record here—which the referee notes—and the reasons for the judicial officer changes are unclear. After the initial judge's rotation out of family court, a future hearing in the custody matter was then assigned to a different district court judge, though there is no record of notice of judicial reassignment. The day after Langree filed to have the apparently newly assigned district court judge removed, a family court referee was assigned to the case for reasons not reflected in the record.

The newly assigned referee held a teleconference with the attorneys in March 2021, where the referee stated that he would be retiring in June, at which point Langree advised the referee that he planned to file numerous additional motions. The referee directed Langree to file those motions as quickly as possible and scheduled a preemptive evidentiary hearing on those motions for early May. Langree then filed a letter with the court seeking an extension to file his motions until July—the month *after* Langree knew the assigned referee was set to retire. The referee extended the deadline to April 9, 2021. On April 8, Langree sought another extension to April 15, citing complications related to COVID and travel, which was granted. However, rather than file any of the "numerous" motions alluded to in the teleconference with the referee, Langree filed a motion to remove the referee for cause, which was denied. Langree then told the referee and Mother's attorney that he intended to appeal the denial of removal, so the preemptive evidentiary hearing was cancelled, and a new referee was required to assume the matter due to the retirement. Langree never filed the threatened appeal.

The new referee deemed the case ready for trial, which was scheduled for September 2021. During the scheduling teleconference, Langree asked for a motions hearing date, to which Mother's attorney responded that if Langree were to file additional motions, she would move to have Father declared a frivolous litigant. A motion hearing was granted and set for late June. Throughout June, Langree filed numerous motions, many of them plainly duplicative of issues already decided, and most were untimely filed a week before the motion hearing. On the date of the motion hearing, Mother's attorney filed a motion for Rule 11 sanctions against Langree and to have Father declared to be a frivolous litigant.

The district court denied all of Langree's motions, but granted Mother's motions to sanction Langree and have Father declared a frivolous litigant.[3]  Langree himself was ordered to pay attorney's fees plus penalties for Mother's response to his most recent frivolous motions.[4]

In August 2021, Langree appealed again to the court of appeals, this time on the issues of sanctions and designation as a frivolous litigant, as well as many issues that had previously been dealt with by that court.  The court of appeals dismissed the appeal because most issues were not yet appealable.[5]

In November 2021, the referee granted Mother's countermotion for custody modification.  In January 2022, the court issued its final order on the child support issue.

In March 2022, Langree appealed only the order of sanctions against him, personally.  The court of appeals denied this appeal as premature because no judgment had yet been entered on the sanctions order.

In June 2022, Langree filed a notice of appeal with the court of appeals seeking review of the district court's orders regarding custody and child support, which was

---

[3]    "A person who in any action or proceeding repeatedly serves or files frivolous motions, pleadings, letters, or other documents, conducts unnecessary discovery, or engages in oral or written tactics that are frivolous or intended to cause delay," is a "frivolous litigant."  Minn. R. Gen. P. 9.06(b)(2).

[4]    Langree was ordered to pay attorney's fees resulting specifically from Mother having to respond to two filings Langree made in June 2021 and Mother's attorney having to draft and file the frivolous litigation motion.  Father remained responsible for the nearly $33,000 in attorney's fees previously ordered.

[5]    Though the imposition of sanctions was appealable at the time, the court of appeals dismissed in the interest of judicial economy.

dismissed as untimely. In a separate appeal, Langree again requested review of the imposition of sanctions by the court of appeals. In December 2022, the court of appeals found that the district court did not abuse its discretion because, among other reasons, the fact that Langree had not prevailed on even one of his multitudinous motions was indicative of their frivolousness.

In January 2023, the Director petitioned us for disciplinary action against Langree and requested an appointment of a referee. In Langree's response to the petition, he asked us to disqualify the Director, the assistant senior director of the OLPR, and "all of the OLPR." He also asked us to disqualify one of the district court judges from the custody matter that led to the Director's petition for discipline. We appointed a referee to Langree's disciplinary matter in February 2023.

The day after the referee was appointed, Mother's attorney reached out to Langree about his nonpayment of the ordered attorney's fees, and he responded that we had "appointed a referee to consider the issue" of his request to "invalidate the judgment." When Mother's attorney expressed her confusion, Langree responded with:

> Yes I am contesting the unlawful behavior of the judge's [sic] through the mechanism of the attorney complaint. This gives me direct access to the Supreme Court and the ability to have hearings before a referee. I am confident now that I have the attention of the judicial officers with authority and the duty to correct the judicial misconduct, the proper result will be determined. The court has the obligation to address and correct misconduct below. I will keep you informed as to the process chosen by the referee.

The referee's findings of fact and conclusions of law were filed in September 2023, and concluded that Langree had engaged in professional misconduct. The referee found that Langree: 1) demonstrated a lack of requisite thoroughness, preparedness, and legal

10

skill and knowledge in violation of Rule 1.1; 2) asserted numerous frivolous claims in violation of Rule 3.1; 3) knowingly disobeyed an obligation under the rules of a tribunal in violation of Rule 3.4(c); 4) purposely delayed proceedings and burdened an opposing party in violation of Rule 4.4(a); 5) engaged in conduct intended to disrupt a tribunal in violation of 3.5(h); and 6) engaged in conduct that was ultimately prejudicial to the administration of justice in violation of Rule 8.4(d). The referee recommended a minimum 40-day suspension from the practice of law for the violations.

## ANALYSIS

Neither party ordered a transcript of the hearing before the referee; therefore, the referee's factual findings are conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). Similarly, when no transcript has been ordered, the conclusions drawn by the referee from the facts are accepted, including whether the Rules of Professional Conduct have been violated. *In re McCloud*, 998 N.W.2d 760, 765 (Minn. 2023).

Langree does not deny any of the referee's factual findings, though he does make a blanket denial of "the validity of each of the charges offered against [him] by the [Director]." It is unclear from Langree's briefing what makes the Director's charges invalid, and in any event, the referee concluded they were valid. It appears that Langree implicitly challenges the referee's findings by attempting to relitigate the family court matter at the root of these disciplinary proceedings through his briefs to us. But even if these were among the findings of fact and conclusions of law that could be challenged, raising any such challenges here requires ordering a transcript. Here, because neither

11

Langree nor the Director ordered a transcript, we cannot entertain Langree's challenge, and the referee's findings of fact are conclusive and his conclusions of law are accepted.[6] The only issue for us to decide is the appropriate discipline.

The purpose of attorney discipline is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Siders*, 903 N.W.2d 218, 219 (Minn. 2017) (order) (citation omitted) (internal quotation marks omitted). We analyze four factors when determining the appropriate discipline: A) the nature of the misconduct; B) the cumulative weight of the disciplinary violations; C) the harm to the public; and D) the harm to the legal profession. *In re Greenman*, 860 N.W.2d 368, 376 (Minn. 2015). We will also weigh any aggravating or mitigating factors when considering the proper discipline. *Id.*

A.

The nature of Langree's misconduct was serious. Though it only involved a single matter, Langree's behavior involved numerous frivolous arguments or failures to comply with court rules. "[S]uch an abuse of the litigation process constitutes serious misconduct." *In re Selmer*, 866 N.W.2d 893, 900 (Minn. 2015) (citation omitted) (internal quotation marks omitted).

---

[6] "We will, however, review the referee's interpretation of the Rules of Professional Conduct, and other conclusions of law that do not rely on the referee's factual findings, de novo, whether or not a transcript is part of our record on review." *In re Montez*, 812 N.W.2d 58, 66 (Minn. 2012). We discern no issue in this case with the referee's interpretation of the Rules of Professional Conduct and see no conclusions of law that were not derived from the factual findings.

Many of Langree's filings and appeals were untimely, demonstrating a lack of skill, knowledge, thoroughness, and preparation. Langree filed at least 11 untimely motions and made untimely or premature appeals to both the court of appeals and this court over the course of this custody matter. Langree also filed multiple motions that were procedurally deficient and accordingly not considered by the court. Many—if not most—of his motions were also clearly frivolous. In this contested, but fairly straightforward custody modification matter, Langree made at least 25 separate motions, appealed to the court of appeals six times, and submitted a PFR to this court. Many of Langree's filings "were unsupported by fact and/or law." Many filings also included requests that had previously been made to and decided by the court, and the court of appeals specifically found that the fact Langree had not prevailed on a single motion was "indicative of the frivolousness of his motions."

Langree also repeatedly refused to obey his obligations under court rules. In April 2020, after the district court explicitly limited a scheduled hearing to specified issues, Langree submitted materials to the court that raised six issues beyond those the court had limited the hearing to. These were also the same filings in which Langree instructed the district court to ignore the ruling of the court of appeals. A few months later, Langree again filed motions in anticipation of a hearing pertaining to issues outside the scope of the hearing, as limited by the district court.

Langree also abused the litigation process in order to delay the tribunal. He caused numerous delays by filing to have the GAL and nearly every judicial officer involved in the custody matter removed. Langree also filed frivolous emergency motions for non-

13

emergency issues, and petitions for writs of mandamus and prohibition for non-extraordinary matters.

B.

When considering the cumulative weight of a lawyer's misconduct, we "distinguish between a brief lapse in judgment or a single, isolated incident and multiple instances of misconduct occurring over a substantial amount of time." *In re Igbanugo*, 989 N.W.2d 310, 329 (Minn. 2023) (citation omitted) (internal quotation marks omitted). Multiple instances over a substantial span of time "warrants greater discipline." *In re Capistrant*, 905 N.W.2d 617, 621 (Minn. 2018). Accordingly, the "cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004).

Langree's misconduct involved only the one custody matter, though the matter dragged on for approximately 4 years as a direct result of his misconduct. During that time, Langree filed dozens of mostly frivolous motions, incorrectly or inappropriately appealed the district court's decisions numerous times, and sought to remove nearly every judicial officer involved in the custody case. We agree with the referee's conclusion that Langree's instances of misconduct were "numerous and extended over a significant period of time. His actions over three plus years in the family file establish a pattern of conduct that cannot

be ignored." Langree's behavior provides a model example of "multiple instances of misconduct occurring over a substantial amount of time." *Igbanugo*, 989 N.W.2d at 329.

C.

"We measure harm to the public based on the quantity (the number of clients harmed) and the quality (the extent of the clients' injuries)." *In re Udeani*, 945 N.W.2d 389, 397 (Minn. 2020). Father was harmed by Langree, and Mother, a nonclient, was also harmed. Father was harmed in that he was ordered to pay $32,906.96 to Mother for "conduct-based attorney's fees" and was declared a frivolous litigant, which required him to post a bond for any further filings. Mother was harmed by facing significantly increased attorney's fees and the uncertainty of the legal morass wrought by Langree's frivolous motions and appeals.

D.

Harm to the legal profession is measured by considering whether an attorney's breach of trust "reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *Udeani*, 945 N.W.2d at 398 (citation omitted) (internal quotation marks omitted). "Misconduct that undermines the public's confidence in the ability of attorneys to abide by the rule of law harms the legal profession." *In re Kennedy*, 946 N.W.2d 568, 581 (Minn. 2020) (citation omitted) (internal quotation marks and alterations omitted). Additionally, frivolous claims harm the legal profession because they are "a waste of court resources." *Selmer*, 866 N.W.2d at 900.

Langree's behavior represented multiple instances of misconduct, which erodes public confidence in lawyers and the legal profession. *See In re Lennington*, 969 N.W.2d

15

76, 84 (Minn. 2022) (finding that the attorney's "multiple instances of misconduct eroded the public confidence in lawyers and the legal profession"). Also, Langree's actions harmed the legal system itself because the significant judicial resources expended when the custody case took significantly longer than it should have wasted resources and required other judicial officers to take up the slack.

E.

Next, we consider any aggravating or mitigating factors. Here, the referee found three aggravating factors: 1) Langree lacked remorse or recognition for the wrongfulness of his conduct; 2) his misconduct continued during the discipline proceeding; and 3) he had substantial experience.

A lack of recognition by an attorney of their misconduct—and a lack of remorse for such conduct—constitutes an aggravating factor. *See In re Nathanson*, 812 N.W.2d 70, 80 (Minn. 2012). An attorney who fails to acknowledge their wrongful conduct is concerning to us because it indicates the attorney "might engage in similar conduct in the future unless they are appropriately sanctioned." *In re Blomquist*, 958 N.W.2d 904, 915–16 (Minn. 2021) (citation omitted) (internal quotation marks omitted). Throughout the disciplinary proceeding and in his briefs to us, Langree has exhibited no remorse or acknowledgment of the harm done by his misconduct. Moreover, he apparently does not comprehend the disciplinary process, as he is attempting to use these proceedings as an avenue to relitigate the family court matter, rather than acknowledge his misconduct in any capacity.

Failure to cooperate after a disciplinary petition has been filed is an aggravating factor. *In re Taplin*, 837 N.W.2d 306, 313 (Minn. 2013). Frivolous conduct during

16

disciplinary proceedings may also contribute as an aggravating factor. *In re Laver*, 984 N.W.2d 556, 567 (Minn. 2023) (citing *In re Ulanowski*, 800 N.W.2d 785, 803 (Minn. 2011). In proceedings before the referee, Langree moved to disqualify the Director and OLPR staff, and he made the same request to us—with an additional request to remove the referee. Further, rather than cooperate with the referee or with us in this proceeding, Langree requested both the referee and this court to provide relief and/or intervene in the underlying family law matter through these disciplinary proceedings with no rationale or support in the law. Langree's frivolous conduct from the family law matter has carried through to the disciplinary matter and is an aggravating factor.

"Substantial practice in the law is also an aggravating factor because it is assumed that an experienced attorney has had an opportunity to become familiar with the law." *In re Fett*, 790 N.W.2d 840, 851 (Minn. 2010). We also consider an "attorney's experience in a particular area of the law to be an aggravating factor when the misconduct arises from that area of practice." *Id.* at 852. The referee concluded that Langree has "substantial experience in the family law, child welfare and child abuse areas of law." Langree's misconduct in light of this experience is an aggravating factor.

The referee found one mitigating factor: good character. Evidence of good character, pro bono legal work, and volunteer activities may be considered a mitigating factor. *In re Rooney*, 709 N.W.2d 263, 271 (Minn. 2006). Langree does a significant portion of his legal work for little to no pay, and he does substantial volunteer work in Haiti

17

and Venezuela. Langree also cares for his special needs adult adoptive son, which speaks to his good character in his personal and family life.

F.

Having considered these factors, we now must determine the appropriate discipline. Though we are "the sole arbiter of the discipline to be imposed for professional misconduct by Minnesota lawyers," *In re Stoneburner*, 882 N.W.2d 200, 206 (Minn. 2016) (citation omitted) (internal quotation marks omitted), "we give 'significant weight' to a referee's recommendation," *In re Riehm*, 883 N.W.2d 223, 233 (Minn. 2016) (quoting *In re Singer*, 541 N.W.2d 313, 315 (Minn. 1996)). Ultimately, when determining discipline, we attempt to be consistent with prior cases, but also recognize that the "proper discipline is ultimately determined based on the unique facts and circumstances of each case." *In re Nielson*, 977 N.W.2d 599, 612 (Minn. 2022) (citation omitted) (internal quotation marks omitted).

This case is similar in many respects to *In re Graham*, 453 N.W.2d 313 (Minn. 1990). There, the attorney alleged a conspiracy involving a federal judge, a federal magistrate judge, a county attorney, the county attorney's attorney, and others. *Id.* at 315. He also accused a judge of judicial misconduct when attempting to have the magistrate judge recused from considering an award of attorney's fees. *Id.* at 318–19. Those allegations were found to be false and without merit. *Id.* Also, the attorney in that case moved during the disciplinary proceedings for this court to remove the then-Director of the OLPR and his assistant. *Id.* at 316. "By repeatedly entering frivolous motions to remove those who oppose him," the attorney was found to be in continuing violation of Rule 3.1. *Id.* at 325. We imposed a 60-day suspension. *Id.* at 325.

The case found most similar by the referee was *In re MacDonald*, 906 N.W.2d 238 (Minn. 2018), in which nearly all of the attorney's rule violations were like those of Langree. There, the attorney filed frivolous claims, repeatedly disrupted and delayed a tribunal, and incompetently represented her client, among other things. *Id.* at 241–43. The referee in *MacDonald* found four aggravating factors (which we reduced to two), no mitigating factors, and recommended a 60-day suspension, 2 years of probation, and a mental health evaluation. *Id.* at 248–49. This court did not require the mental health evaluation, but agreed with the 60-day suspension, followed by 2 years of supervised probation. *Id.* at 250. Granted, the underlying behavior in *MacDonald* is not totally analogous to Langree's behavior, but the rule violations are largely comparable, and the delays caused were no less serious.

The cumulative nature of Langree's misconduct in the custody matter caused a routine family law matter to drag on for 4 years and cost his own client nearly $33,000 in conduct-based attorney's fees. The Director urges we adopt a 60-day suspension. The referee—despite finding *MacDonald* and its 60-day suspension "most instructive" as to the level of discipline—recommended a 40-day suspension because Langree's behavior did "not reach the same level" as the attorney in *MacDonald*. In light of the deference we show to a referee's recommendation, we agree that a 40-day suspension is appropriate here.

But because there is no one-size-fits-all discipline—even in cases of identical rule violations—our inquiry continues. Generally, an attorney suspended for 90 days or fewer will not be required to petition for reinstatement. *See* Rule 18(f), RLPR ("Unless otherwise ordered by this Court, [requirements pertaining to the process of reinstatement by petition]

19

shall not apply to lawyers who have been suspended for a fixed period of ninety (90) days or less."). However, if we find a compelling reason to believe that future misconduct may be likely, we may require reinstatement proceedings for suspensions of 90 days or fewer. *See McCloud*, 998 N.W.2d at 771 (requiring petition for reinstatement from a 90-day suspension because we did not "feel sufficiently comfortable that [the attorney] w[ould] reform his practices in response to the . . . discipline"); *In re Nathanson*, 812 N.W.2d at 81 (requiring a petition for reinstatement for a 90-day suspension when the attorney did not adequately account for why the misconduct occurred or for client harm and had not taken steps to prevent future misconduct); *see also In re Gurstel* 540 N.W.2d 838, 843 (Minn. 1995) (requiring a petition for reinstatement for a 60-day suspension).

Here, Langree's behavior during the disciplinary proceedings creates serious doubt that he has accepted or will accept responsibility for his misconduct. Rather than address his own misconduct, Langree has continuously focused on the conduct of nearly everyone else involved in the underlying family law matter. His conduct at oral argument is representative of this behavior. Langree brought Father to our courtroom, introduced him to us, and argued that the underlying custody case involved the rampant fraud and misconduct of others, while failing to substantively address the disciplinary matter or answer the questions of the court. Langree also continued to engage in the exact type of misconduct he committed in the family law matter in his disciplinary case by making frivolous arguments that the Director, the entire OLPR staff, and the referee should be

20

disqualified from his disciplinary case or that we should issue substantive rulings in the family law matter in this discipline case.[7]

Nor has Langree "adequately explained why the misconduct occurred," "addressed how clients were harmed," or set forth "what steps he has taken to prevent further misconduct," which we have found instructive when determining whether a petition for reinstatement should be required for suspensions of 90 days or less. *Nathanson*, 812 N.W.2d at 81 (quoting *In re Crandall*, 699 N.W.2d 769, 772 (Minn. 2005)) (internal quotation marks omitted). Because we are concerned that further misconduct is likely, we conclude that Langree must petition for reinstatement pursuant to Rule 18(a)–(d), RLPR.

Accordingly, we order that:

1. Respondent Richard S. Langree is suspended from the practice of law, effective 14 days from the date of this opinion, with no right to petition for reinstatement for 40 days;

2. Respondent must petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. Reinstatement is conditioned on satisfaction of continuing legal education requirements, *see* Rule 18(e)(4), RLPR, and successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility, *see* Rule 18(e)(2),

---

[7]     For example, Langree argued to us that the referee is disqualified because he denied Langree's request to disqualify the Director and the staff of the OLPR from his disciplinary case and because he rejected Langree's arguments that his actions in the family law matter were not misconduct. A judge's adverse rulings, however, are not enough to show bias. *See State v. Mouelle*, 922 N.W. 706, 716 (Minn. 2019). Langree's claim that the referee should be disqualified has no basis in law or fact and is frivolous.

RLPR; Rule 4.A(5), Rules for Admission to the Bar (requiring evidence that an applicant has successfully completed the Multistate Professional Responsibility Examination).

3. Respondent must pay $900 in costs, *see* Rule 24(a), RLPR, and must comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

Suspended.


HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.